IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-31260
_____

KATHY HUNT,

PLAINTIFF-APPELLANT,

v.

RAPIDES HEALTHCARE SYSTEM, LLC, doing business as Winn Parish
Medical Center,

DEFENDANT-APPELLEE.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

December 26, 2001

Before BARKSDALE and STEWART, Circuit Judges, and ROSENTHAL[*],

District Judge.

ROSENTHAL, District Judge:

This appeal addresses the responsibility of an employer toward
an employee who has taken leave under the Family and Medical Leave
Act ("FMLA"). Kathy Hunt appeals the district court's grant of
summary judgment dismissing her claims that her former employer,
the Rapides Healthcare System, L.L.C. d/b/a Winn Parish Medical

_____

[*] District Judge of the Southern District of Texas, sitting by
designation.

1

Center ("Medical Center"), violated her FMLA rights and retaliated against her by refusing to restore her to the position she held before taking medical leave or to provide her an equivalent position. This court reverses in part, affirms in part, and remands the case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

Hunt worked as a registered nurse in the Medical Center's Critical Care Unit ("CCU"). On September 14, 1997, Hunt was in a car accident and suffered chest and lung contusions. During her three-day hospital stay, Hunt talked by telephone to a supervisor at the Medical Center, describing her injuries and requesting family and medical leave. The supervisor told Hunt that she would be placed on medical leave. Over the next month, Hunt had several telephone discussions with Medical Center personnel about her leave status and the Center's need for documentation of Hunt's medical condition from her physician.

On October 17,1997, Hunt met with the Medical Center's personnel manager and received a letter stating that she had been placed on FMLA leave as of September 19, 1997, the first scheduled work day following the accident, and that the leave period would end on December 12, 1997.[1] On December 16, 1997, the Medical

_____

[1] In late 1997 and early 1997, Hunt had taken a five-week leave of absence due to "stress-related illness." The record does not reflect that the Medical Center provided Hunt any documentation designating this absence as leave under the FMLA or included this

2

Center's personnel director sent Hunt a letter stating that her twelve weeks of FMLA leave had expired and that if she did not provide medical documentation to support her leave by December 31, 1997, her employment would be considered abandoned. After she received this letter, Hunt gave her supervisors a copy of a note from her doctor dated November 21, 1997. That note stated that Hunt had been under the doctor's care since September 17 and was released to return to work on December 1, 1997. Hunt returned to work on January 6, 1997, but not in the same position she held before the accident.

During Hunt's leave, the Medical Center assigned her full-time day shift CCU position to a different nurse. When Hunt notified the Medical Center that she was ready to return to work, no full-time day shift CCU nurse position was open. The Medical Center offered Hunt a full-time night shift position at the CCU. Hunt declined the night shift position on the basis of her family situation; as a single parent, she had to be at home at night. Hunt asked to be placed in the Variable Staffing Pool ("VSP"), where she was able to work the day shift in the CCU, but on a part-time, as needed basis. Although other full-time day shift positions subsequently became available in departments outside the CCU, Hunt did not apply, preferring to remain in that unit.

---

absence in the leave period following her September 1997 automobile accident.

3

The summary judgment record shows that over the next months, Hunt received a merit bonus. However, while working an average of 45.1 hours in each two-week period, Hunt made less money than she had working full-time, and she lost the health, retirement, and leave benefits of full-time employment. On May 8, 1998, Hunt resigned.

Although these facts are undisputed, the parties vigorously dispute whether Hunt attempted to return to work before December 12, 1997, the date the Medical Center designated in writing as the end of her FMLA leave. Hunt presented summary judgment evidence that in late November, before her leave expired, she told Peters, her shift supervisor, that she wanted to be placed on the nursing schedule in early December. The Medical Center provided testimony from Peters that Hunt did not make any request to return to work until the end of December 1997, after her FMLA leave had expired.

Specifically, Hunt testified that shortly after November 21, 1997, when she received the note from her doctor releasing her to work after December 1, she telephoned Peters and asked to be placed on the December work schedule. Hunt testified that during the conversation, Peters told her that he had already assigned her day shift CCU position to another nurse. Peters offered Hunt the full-time night shift CCU position, which she declined.

By contrast, Peters testified that this conversation with Hunt did not occur until after December 12, 1997. According to Peters, although Hunt may have telephoned him in late November, she did not

4

ask to be placed on the nursing schedule until late December 1997. Peters stated that he told Hunt in late December that he had already assigned the full-time day shift CCU position to another nurse.

If, as Hunt testified, she asked to return to work before December 12, 1997, the FMLA required the Medical Center to return her to her previous position or an equivalent position. If Peters's testimony is credited, the applicable case law leads to the conclusion that the Medical Center did not violate Hunt's FMLA rights because she did not attempt to return to work until after her leave period had expired.

In addition to the dispute as to whether Hunt sought to return to work before her leave expired, the parties also dispute whether the Medical Center offered Hunt a position equivalent to the job she held before her leave. Hunt contends that the full-time CCU nurse night shift position was not equivalent to the day shift position. The Medical Center contends that the positions were equivalent because the compensation and duties were the same. The parties also dispute whether the assignment to the "pool nurse" position was an adverse employment action that can support a retaliation claim. Hunt argues that by offering her the night shift position, knowing she would not accept it, the Medical Center "forced" her to accept the part-time "pool nurse" job, in retaliation for taking FMLA leave. Hunt argues that the decline in compensation and feeling of demotion resulting from the part-time

5

position left her no alternative to resignation; she claims constructive discharge. The Medical Center contends that neither its offer of the full-time night shift CCU position, nor Hunt's decision to accept a part-time day shift CCU position, can constitute retaliation or constructive discharge, as a matter of law.

Hunt filed this suit in October 1999, claiming that the Medical Center had violated the FMLA, 29 U.S.C. § 2601 *et seq.*, and the Department of Labor regulations for proper notice of FMLA leave, by failing properly to designate Hunt's FMLA period and by failing to restore Hunt to her prior position or an equivalent position after she timely sought to return to work. Hunt also alleged that the Medical Center retaliated against her for taking FMLA leave, by assigning her a part-time position with no benefits, amounting to constructive discharge. The district court granted the Medical Center's motion for summary judgment, finding that Hunt did not attempt to return to work until after her leave had expired, relieving the Medical Center of the obligation to restore her prior position. The district court rejected Hunt's testimony that she asked to return to work in November 1997 and accepted Peters's contrary testimony that Hunt did not make the request until late December 1997, after her twelve weeks of FMLA leave had ended. The district court rejected Hunt's contention that under the Department of Labor regulations, her leave extended past

6

December 1997 because the Medical Center could not retroactively designate leave to begin in September by written notice given in October. The district court concluded that the DOL regulation prohibiting such retroactive notice was invalid. Finally, the district court found that Hunt had failed to establish a prima facie case of retaliation under the FMLA.

This appeal followed.

## II. THE STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. See Tolson v. Avondale Indus., Inc., 141 F.3d 604, 608 (5th Cir. 1998). Summary judgment is appropriate when there "is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Conoco, Inc. v. Medic Sys., Inc., 259 F.3d 369, 371 (5th Cir. 2001)(citation omitted). The court must view facts and inferences in the light most favorable to the party opposing the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. See Merritt-Campbell, Inc. v. RxP Prods., Inc., 164 F.3d 957, 961 (5th Cir. 1999). Credibility determinations are not part of the summary judgment analysis. Anderson, 477 U.S. at 247-49.

## III. ANALYSIS

7

The Family and Medical Leave Act of 1993 allows eligible employees working for covered employers to take temporary leave for medical reasons, for the birth or adoption of a child, and for the care of a spouse, child, or parent who has a serious health condition, without the risk of losing employment. 29 U.S.C. § 2601(b)(1) and (2).[2] The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers. See Nero v. Indus. Molding Corp., 167 F.3d 921, 927 (5th Cir. 1999); Bocalbos v. Nat'l W. Life Ins. Co., 162 F.3d 379, 383 (5th Cir. 1998). The statute prescriptively provides a series of substantive rights. See id. The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); see Chaffin v. John H. Carter Co., Inc., 179 F.3d 316, 319 (5th Cir. 1999).[3]  When an eligible employee returns from

_____

[2]     The Act applies to private-sector employers with fifty or more employees. 29 U.S.C. § 2611(4)(A)(i)(1999).  An employee who has worked for a covered employer for at least 1250 hours during the preceding twelve months is eligible for FMLA leave. 29 U.S.C. § 2611(2).  It is undisputed that the Medical Center was a covered employer and that Hunt was eligible for FMLA leave.

[3]     29 U.S.C. § 2612(a)(1)(1999) provides in relevant part that:
> ... an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
> ......

8

leave taken under the FMLA, the employer must restore the employee to the same position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1); see Nero, 167 F.3d at 925.[4] The FMLA also contains proscriptions against penalizing an employee for the exercise of FMLA rights. 29 U.S.C. § 2615(a)(1)-(2); see Chaffin, 179 F.3d at 319.[5] Hunt asserts violations of both the prescriptive and proscriptive provisions of the Act.

A.    The Claim Based on the Failure to Reinstate

_____

> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

[4]    29 U.S.C. § 2614(a)(1)(1999) states in relevant part that:

> ...any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave --
> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
> (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

[5]    29 U.S.C. § 2615(a)(1999) provides in relevant part that:
> (1) It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
> (2)  It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

9

Hunt asserts that the Medical Center's failure to reinstate her to her former full-time day shift CCU nursing position or an equivalent position violated her substantive rights under the FMLA. If an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires. See Brown v. Trans World Airlines, 127 F.3d 337, 342-43 (4th Cir. 1997); Barnett v. Southern Foods Group, L.P., No. 3:96-CV-0634-D, 1997 WL 369413 (N.D. Tex. July 1, 1997); Beckendorf v. Schwegmann Giant Supermarkets, Inc., No. 97-30539, 1997 WL 191504 at *3 (E.D. La. Dec. 18, 1997); Nunes v. Wal-Mart Stores, Inc., 980 F. Supp. 1336, 1340-41 (N.D. Cal. 1997), rev'd on other grounds, 164 F.3d 1243 (9th Cir. 1999); Stopka v. Alliance of Am. Insurers, No. 95 C 7487, 1996 WL 717459 at *8 (N.D. Ill. Dec. 9, 1996), aff'd on other grounds, 141 F.3d 681 (7th Cir. 1998).

The first issue is whether Hunt sought to return to work before her FMLA leave expired. If Hunt did not attempt to return to work on or before her FMLA leave expired on December 12,1997, the Medical Center was no longer under an express statutory duty to reinstate her to her former position or to an equivalent position. In her deposition, Hunt testified that when she received the written release to return to work from her physician on November 21, 1997, she telephoned some of her fellow nurses assigned to the CCU to talk about returning to work. Two nurses told Hunt that she should call Peters because her position had already been given to

10

another nurse. Hunt testified that she called Peters before December 1, 1997 because she wanted to be placed on the December schedule.  Peters told Hunt that her day position was no longer available, but that she could return to a full-time position on the night shift in the CCU or to a part-time day shift position. Peters testified in his deposition that this conversation occurred in late December 1997, and certainly after December 12,1997, the date the Medical Center designated as the end of Hunt's FMLA leave.

The district judge found that Hunt did not attempt to return to work until late December 1997, after the twelve-week protected leave period ended. The district judge characterized Hunt's testimony as to when she attempted to return to work as lacking "support," citing the fact that Hunt had taken "steps to remain away from work on long term disability" in mid-December 1997. However, the undisputed evidence showed that Hunt's only "steps" consisted of asking for information on long-term disability benefits. Hunt did not make further inquiries and did not apply for long-term disability leave.

The district court's reliance on this evidence in rejecting Hunt's testimony that she talked to Peters about returning to work in late November 1997 receives some support from the fact that only a full-time employee is eligible for long-term disability.  If Hunt had to be on full-time status to receive long-term disability benefits, the fact that she requested information about such benefits suggests that she considered herself a full-time employee

11

when she asked for the information, which in turn suggests that she had not yet learned that Peters had assigned her full-time day shift position to another nurse. However, this chain of inference is an insufficient basis for resolving the disputed testimony as to when Hunt attempted to return to work.  Other evidence in the record is inconsistent with these inferences. Hunt testified that it was Peters who suggested long-term disability benefits as an option after he told her about the job reassignment in late November 1997. Hunt testified that even after she knew that her former job had been reassigned, she still hoped that she would be returned to a full-time day shift position in the CCU.  Hunt's mid-December 1997 request for information about long-term disability benefits does not necessarily lead to the conclusion that she had not yet talked to Peters about returning to work, as Peters testified.

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods. Co., 530 U.S. 133, 150 (2000)(in context of judgment as a matter of law, which "mirrors" summary judgment and involves the same inquiry); Anderson, 477 U.S. at 250-51.  The court "must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves, 530 U.S. at 151.  The fact that Hunt requested information about long-term disability is not sufficient to resolve the factual dispute as to whether Hunt talked to Peters about returning to work before or

12

after December 12, 1997, when the designated FMLA leave period ended.

The Medical Center argues that even if there is a fact issue as to whether Hunt asked to return to work before December 12, 1997, summary judgment is nonetheless proper because, as a matter of law, the Center's failure to restore Hunt's previous position did not violate her FMLA rights. The Medical Center makes three arguments in support. First, it argues that Hunt was not physically able to return to work until after her leave expired. In late November 1997, when Hunt testified that she attempted to return to work, her doctor had only released her to work up to seventy-two hours in a two-week period. The job of a full-time CCU nurse required work of between seventy-two to eighty-four hours in each two-week period. However, when Peters offered Hunt's previous position to a different nurse, he did not know of the physician's limitation. Peters acknowledged in his testimony that he did not consider the limit on the number of hours Hunt could work when he offered her job to another employee. The Medical Center considered Hunt physically capable of performing the work necessary for the full-time night shift CCU position, which required the same number of hours and duties as the day shift position. This argument does not support the grant of summary judgment.

The Medical Center's second argument is that the five weeks of leave Hunt took in late 1996 and early 1997 counted toward the FMLA leave at issue here. If the Medical Center's argument is correct,

13

Hunt exceeded her twelve-week leave even if she attempted to return to work in November 1997. Neither the facts nor the law supports this argument. The Medical Center itself considered Hunt entitled to twelve weeks of FMLA leave beginning in September 1997, after her car accident. The Medical Center told Hunt, in writing, that she had twelve weeks of leave that would expire on December 12, 1997. That is inconsistent with the Medical Center's present position, under which Hunt would have been entitled to only seven weeks of FMLA leave that would have expired in early November 1997.

Under the statute, an employer may choose one of four ways to determine the twelve-month period in which the twelve weeks of FMLA leave accrues: (1) the calendar year; (2) any fixed twelve-month "leave year," such as a fiscal year; (3) the twelve-month period measured forward from the date any employee's first FMLA leave begins; or (4) a "rolling" twelve-month period measured backward from the date an employee uses any FMLA leave. 29 C.F.R. § 825.200(b)(2001). If the employer uses one method, it must do so consistently and uniformly for all employees. 29 C.F.R. § 825.200(d)(1)(2001). If the employer has not selected a particular method, it must use the one most favorable to the employee. 29 C.F.R. § 825.200(e)(2001). The Medical Center did not submit evidence that it had selected any particular method. The Medical Center cannot later select a method to calculate the twelve-month period in which leave accrues that produces an earlier expiration

14

date for Hunt's leave than the date the Medical Center itself designated in its written notice to Hunt.

The Medical Center's third argument is that even assuming Hunt sought to return to work before her FMLA leave expired on December 12, 1997, Peters offered her an equivalent position that met the employer's obligation under 29 U.S.C. § 2614(a)(1). The district court did not reach this issue because it had already concluded that Hunt did not seek to return to work until after her FMLA leave had expired. If the undisputed facts show that, as a matter of law, the Medical Center offered Hunt an equivalent position, summary judgment is appropriate notwithstanding the dispute as to when Hunt sought to return to work. See Faruki v. Parsons, 123 F.3d 315, 320 (5th Cir. 1997)(if plaintiff failed to establish a different element of a *prima facie* case of discriminatory discharge under Title VII and the ADEA, summary judgment is still appropriate).

An equivalent position is "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, prerequisites and status." 29 C.F.R. § 825.215(a)(2001). The Department of Labor regulations provide that an "employee is ordinarily entitled to return to the same shift or an equivalent work schedule." 29 C.F.R. § 825.215(e)(2)(2001). A necessary exception is provided if the position has been eliminated, but if the position has simply been filled by another employee, the leave-taking employee is "entitled

15

to return to the same shift on which employed before taking FMLA leave." 29 C.F.R. § 825.216(a)(2)(2001).

It is undisputed that Peters offered Hunt the opportunity to work a full-time night shift position in the CCU, at the same rate of pay, and with the same duties, as her previous day shift position. The record shows that although the Medical Center did not formally hire nurses for particular shifts, the routine practice was to hire nurses to work only on specific shifts. Hunt had been working as a designated day shift CCU nurse since 1995. When Hunt asked to return to her day shift CCU position, Peters told her that he had assigned a different nurse to that day shift position and offered Hunt a night shift CCU job. The question is whether the positions are, as a matter of law, equivalent for the purpose of the substantive obligation imposed by the FMLA.

The Department of Labor Guidelines do not treat different shifts involving the same duties and pay as equivalent jobs. See 29 C.F.R. § 825.215(e)(2)(stating that an employee is "ordinarily entitled to return to the same shift or the same or an equivalent work schedule"); and 825.216(a)(2)(stating that if a shift has been eliminated, the employee is not entitled to return to work that shift, but if "a position on, for example, a night shift has been filled by another employee, the employee is entitled to return to the same shift on which employed before taking FMLA leave"). The record in this case also supports a lack of equivalence between the night shift and the day shift CCU nursing positions for the purpose

16

of the duty to reinstate under the FMLA.  Peters, Hunt's shift supervisor, conceded in his deposition that most hospital employees found day shift positions more desirable than night shift positions.[6]

Hunt declined the night shift position.  Instead, she took a position as a variable shift pool nurse and worked on an "as needed" basis.  The Medical Center points to evidence in the record that Hunt later declined the opportunity to apply for other full-time, day shift positions, outside the CCU, to support its argument that Hunt simply did not want to return to full-time work, regardless of the time of the shift.  Such evidence is an insufficient basis to conclude that as a matter of law, the day shift and night shift positions are equivalent for the purpose of the duty to reinstate under the FMLA.  In sum, the record discloses  genuine issues of disputed fact  material to determining whether Hunt attempted to return to work before her twelve-week FMLA leave expired and, if so, whether the Medical Center offered her a position  equivalent to her prior job.  These disputed fact issues preclude summary judgment.

Because the district court concluded  that Hunt did not seek to return to work until after the date the Medical Center designated as the end of her FMLA leave, the court had to rule on Hunt's argument that her attempt was timely. Hunt cited Department of Labor

---

[6]    Although Peters denied that there was a "qualitative difference" between the full-time day shift and full-time night shift CCU positions, when asked whether "most people in the hospital environment would rather be on day shift," Peters answered, "I think that's correct."

17

regulations that prohibit an employer from retroactively designating FMLA leave periods. 29 C.F.R. § 825.208(c)(2001). Under these regulations, the Medical Center's October 17,1997 letter to Hunt, designating her leave as beginning on September 19 and ending on December 12, 1997, could not be given "retroactive" effect. Under the DOL regulations, Hunt's leave would not have started until October 17, 1997, when she received written notification designating her absence as FMLA leave. See 29 C.F.R. §§ 825.208, 825.301 (2001). Under the regulations, Hunt would have been entitled to up to twelve weeks of FMLA leave after that date. The regulations require such a result, according to Hunt, despite the fact that she asked to be placed on medical leave shortly after her September 14, 1997 accident and despite the fact that Hunt considered herself to be on FMLA leave as of September 19, 1997, the first work day after the accident.

The Medical Center argued, and the district court held, that the Department of Labor regulations prohibiting such "retroactive" written designations of FMLA leave were invalid because they can result in leave periods extending beyond the twelve weeks the statute requires. Both the Eighth and Eleventh Circuits have found the DOL regulation invalid on this basis. See McGregor v. Autozone, Inc., 180 F.3d 1305, 1308 (11th Cir. 1999); Ragsdale v. Wolverine Worldwide, Inc., 218 F.3d 933, 940 (8th Cir. 2000). The Sixth Circuit has reached the opposite conclusion. Plant v. Morton Int'l, Inc., 212 F.3d 929, 936 (6th Cir. 2000). District courts have

18

similarly divided. Compare Schloer v. Lucent Tech., Inc., No. CIV 99-3392, 2000 WL 128698 at *1 (D. Md. Jan. 21, 2000)(striking down regulations); Neal v. Children's Habilitation Ctr., No. 97 C 7711, 1999 WL 706117 at *2 (N.D. Ill. Sept. 10, 1999)(same); Donnellan v. New York City Transit Auth., No. 98 CIV 1096, 1999 WL 527901 at *4-5 (S.D.N.Y. July 22, 1999)(same); with Ritchie v. Grand Casinos of Mississippi, Inc., 49 F. Supp. 2d 878, 881 (S.D. Miss. 1999)(upholding DOL regulations); Chan v. Loyola Univ. Med. Ctr., No. 97 C 3170, 1999 WL 1080372 at *10 (N.D. Ill. Nov. 23, 1999)(same).

The Fifth Circuit has not yet addressed this issue. However, the present posture of this case does not require this court to do so now. The issue of the validity of the DOL regulations does not arise unless, on remand, the factual dispute as to whether Hunt sought to return to work before December 12, 1997 is resolved in the Medical Center's favor. If it is determined in the trial court that Hunt did not attempt to return to work until after December 12, 1997, the issue of the validity of the DOL regulations still does not arise unless Hunt did not receive an equivalent position when she did return from her leave. If an employee has received her entitlements under the FMLA, she does not have an FMLA claim regardless of the quality of notice that she received. See, e.g., Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 17 F. Supp. 2d 271, 275 (S.D.N.Y. 1998); Lacoparra v. Pergament Home Centers, Inc., 982 F. Supp. 213, 223 (S.D.N.Y. 1997); Dodgens v. Kent Mfg. Co., 955 F.

19

Supp. 560, 565 (D.S.C. 1997). The issue of the validity of the Medical Center's notice designating Hunt's FMLA leave, and of the DOL regulations addressing such notice, need not be reached at this time.

B. The Claim of Retaliation

Hunt also alleged that by reassigning her full-time day shift CCU position, the Medical Center retaliated against her for taking FMLA leave. Hunt links her return to the part-time shift nurse CCU position, with no benefits, to the fact that she was the only Medical Center employee who had taken FMLA leave. She alleges a violation of the anti-retaliation provisions of the Act. See 29 U.S.C. § 2615(a)(1)-(2).

The Fifth Circuit applies the McDonnell Douglas framework to analyze retaliation claims under the FMLA, noting that "there is no significant difference between such claims under the FMLA and similar claims under other anti-discrimination laws." Chaffin, 179 F.3d at 319 (citing King v. Preferred Tech. Group, 166 F.3d 887, 890-92 (7th Cir. 1999)). "McDonnell Douglas has proved an enduring guide for courts addressing claims under various statutes, including Title VII, the Age Discrimination in Employment Act, and the Americans with Disabilities Act." Chaffin, 179 F.3d at 319 (citations omitted). "Nothing in the FMLA landscape suggests that the teachings of McDonnell Douglas would be less useful in ferreting out illicit motivations in that setting." Id. (citation omitted). When an employee claims that an employer has punished her for

20

exercising her right to take FMLA leave, that claim is analyzed under the <u>McDonnell Douglas</u> framework.  <u>Id.</u>

To make a <u>prima facie</u> showing of retaliation under the FMLA, Hunt must show that:(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave. <u>Id.</u>  If Hunt succeeds in making a <u>prima facie</u> case, the burden shifts to the Medical Center to articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action. Once the Medical Center has done so, Hunt must show by a preponderance of the evidence that the Medical Center's reason is a pretext for retaliation.  <u>See</u>  <u>Chaffin</u>, 179 F.3d at 320; <u>Bocalbos</u>, 162 F.3d at 383 (5th Cir. 1998).

The district court held that Hunt failed to satisfy the first element of her <u>prima facie</u> case because she had exceeded her twelve weeks of FMLA leave before attempting to return to work.  That finding has two problems.  First, as discussed above, disputed issues of fact preclude a finding that Hunt failed to attempt to return to work within the twelve week leave period. Second, a plaintiff need not establish a violation of the substantive, prescriptive provisions of the FMLA to allege a violation of the proscriptive provisions. <u>See</u> <u>Chaffin</u>, 179 F.3d at 319.  The FMLA's protection against retaliation is not limited to periods in which an employee is on FMLA leave, but encompasses the employer's conduct

21

both during and after the employee's FMLA leave. The statute provides two distinct causes of action, to which courts apply different analyses. See id. at n.13 (McDonnell Douglas applies to retaliation claims but not to alleged deprivations of substantive rights); see also Michael L. Murphy, Note: The Federal Courts' Struggle with Burden Allocation for Reinstatement Claims Under the Family and Medical Leave Act: Breakdown of the Rigid Dual Framework, 50 Cath. U. L. Rev. 1081 (2001).

The district court also held that Hunt failed to satisfy the second and third elements of her prima facie case because, based on the undisputed facts, she did not suffer an adverse employment action and there was no causal link between the challenged employment action and her protected activity. If Hunt failed to establish either of these elements, summary judgment is appropriate.

Hunt argues that she suffered an adverse employment action because when the Medical Center offered her a full-time night shift CCU position, it "forced" her to take the part-time pool nurse position, in which she worked fewer hours and received no benefits, reducing her compensation. However, the threshold question is whether the Medical Center's offer of a full-time night shift CCU position, which involved the same duties and provided the same compensation and benefits as the day shift position, was an adverse employment action under the anti-retaliation provision of the FMLA.

This court has held that only "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and

22

compensating, satisfy the "adverse employment action" element of a prima facie case of retaliation. Watts v. Kroger Co., 170 F.3d 505, 512 (5th Cir. 1999); Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997); Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995). Where, as here, the evidence is undisputed that an employment action that does not affect job duties, compensation, or benefits, courts have declined to find an adverse employment action under the anti-retaliation provision of Title VII. Watts, 170 F.3d at 512. This court has held that a shift change, without more, is not an adverse employment action. See Benningfield v. City of Houston, 157 F.3d 369, 377 (5th Cir. 1998)(transferring employee to night shift is not adverse employment action for section 1983 retaliation claim where duties, pay, and benefits remained the same); see also Craven v. Texas Dept. of Crim. Justice Inst. Div., 151 F. Supp. 2d 757, 765-66 (N.D. Tex. 2001)(denial of transfer request from morning shift to night shift was not adverse employment action because difference in working hours, alone, is not sufficient under Title VII). Under these authorities, the Medical Center's reassignment of the full-time day shift CCU position and offer of the full-time night shift CCU position is not an adverse employment action that violated the anti-retaliation provision of the FMLA.

Hunt argues that under the DOL regulations, the FMLA may cover a broader range of employment actions than the anti-retaliation provision in Title VII. The regulations provide that "employers cannot use the taking of FMLA leave as a negative factor in

23

employment actions, such as hiring, promotions, or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." 29 C.F.R. § 825.220(c)(2001); see McGarity v. Mary Kay Cosmetics, No. 3:96-CV-3413-R, 1998 WL 50460, *5 (N.D. Tex. Jan. 20, 1998)(finding three-day suspension an "adverse employment action" under FMLA even though not an "ultimate" employment decision because DOL regulations specifically refer to "disciplinary actions").  Even if Hunt is correct in her argument that the DOL regulations make the FMLA anti-retaliation provision applicable to disciplinary actions that would not be covered under the anti-retaliation provision of Title VII, no such action is involved in this case. The DOL regulations do not make every unpopular employment decision following FMLA leave a retaliatory adverse employment action.  The Medical Center's offer of the full-time night shift CCU position was not a demotion in duties or title; was not a job termination; did not affect compensation; and did not impose discipline. See 29 C.F.R. § 825.220(c).  The action was not an adverse employment action that violated the anti-retaliation provision of the FMLA.

This result is consistent with the case law interpreting the term "adverse employment action" under other statutes to which the McDonnell Douglas framework applies. A job transfer that includes a shift change that involves changes in duties or compensation or can be objectively characterized as a demotion may be an "adverse employment action" under the ADA's anti-discrimination provision. See Rizzo v. Children's World Learning Ctrs., Inc., 173 F.3d 254,

24

260 (5th Cir. 1999)(finding that jury could find adverse employment action where plaintiff's duties were exchanged with another employee, and plaintiff's hours were reduced, forcing her to work a split shift in which she still did not work enough hours to qualify for benefits), aff'd en banc,213 F.3d 209 (5th Cir. 2000).  A job transfer may qualify as an "adverse employment action" for the purpose of a First Amendment retaliation claim under 42 U.S.C. § 1983, if the change makes the job "objectively worse."  See Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir. 1999); Forsyth v. City of Dallas, 91 F.3d 769, 774 (5th Cir. 1996); Click v. Copeland, 970 F.2d 106, 109 (5th Cir. 1992).

In Sharp, the court held that the jury was entitled to find that transferring a police officer from the "elite" mounted patrol division to a teaching position at the academy was an adverse employment action.[7] Although the transfer did not involve a decrease in pay, title, or grade, it could be viewed, objectively, as a demotion because the academy position was "less prestigious" than the position in the "elite" mounted patrol division. 164 F.3d at 928, 933. In Forsyth, transferring police officers from positions in the intelligence unit to night patrol positions, with different duties involving less interesting work, less responsibility, and less prestige, as well as less favorable working hours, was an "adverse employment action" in light of evidence that the department

---

[7]    Unlike Click and Forsyth, the review in Sharp was only for plain error.

25

had transferred officers to night patrol in the past as a form of discipline. 91 F.3d at 774. In Click, transferring two deputy sheriffs from the county's law enforcement section to positions as jail guards could be considered adverse employment actions, where the new positions involved significantly different duties; the employees introduced evidence that "everybody" considered transfer from the jail to law enforcement to be a promotion; the sheriff himself acknowledged that "all" jail guards would like to be transferred to law enforcement; and the two deputies had lost seniority rights as a result of the transfer.

By contrast, in Benningfield, transferring an employee to the same position, but in a different shift, did not give rise to a retaliation claim under section 1983. 157 F.3d at 377. "Merely changing [the plaintiff's] hours, without more, does not constitute an adverse employment action." Id. The court in Benningfield distinguished the transfers in Click and Forsyth because those transfers "involved more than mere changes in working hours." Id.

In Serna v. City of San Antonio, a First Amendment retaliation case, the court distinguished Click and Forsyth and held that a job transfer without an accompanying decrease in compensation or disciplinary action could not amount to an adverse employment action. 244 F.3d 479, 485 (5th Cir. 2001). In Serna, a police officer had been transferred from the downtown bike patrol to a regular patrol unit and his shift changed from the first night shift, ending at 2:00 a.m., to the second night shift, ending at

26

6:30 a.m.[8]  The employee showed that he, and some other officers, considered the bike unit more prestigious and desirable than the regular patrol unit, but he did not show that the new position was "objectively worse."  Unlike the employees in Click and Forsyth, the employee in Serna did not present evidence that, viewed objectively, the job transfer amounted to a form of discipline, a demotion, or a reduction in pay or benefits.  244 F.3d at 485.

Hunt seeks to establish an adverse employment action based on her individual preference for the day shift CCU position from which she was transferred.  It is undisputed that the night shift would have offered Hunt the same benefits, responsibilities, and compensation.  An employee's preference for a particular shift is not sufficient.  See Serna, 244 F.3d at 485; Sharp, 164 F.3d at 933; Benningfield, 157 F.3d at 377; Forsyth, 91 F.3d at 774 ("[A] plaintiff's subjective perception that a demotion occurred is not enough."); Click, 970 F.2d at 109.

The Medical Center offered Hunt a full-time, night shift CCU nursing position, with the same duties, benefits, and compensation as her previous position.  There is no allegation or evidence that the Medical Center had used assignment to the night shift in the

---

[8]     In Serna, the employee had not argued that the shift change was undesirable because of circumstances peculiar to that employee.  Hunt has made this argument.  However, in each of these cases, the focus is on the objective qualities of the positions, rather than an employee's subjective preference for one position over another.  That subjective preference, alone, is an insufficient basis for finding an adverse employment action.

27

past as a form of discipline or that it could be characterized, objectively, as a demotion.  The change in shift, without more, does not constitute an adverse employment action under the anti-retaliation provision of the FMLA.

C.  The Claim of Constructive Discharge

Hunt argues that because her family situation prevented her from accepting a night shift position, the loss of her full-time day shift position required her to take a part-time pool nurse job, in which she earned less money and lost her benefits.  Hunt alleges the she could not continue to work under such circumstances, amounting to constructive discharge.

A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign.  See Faruki v. Parsons, 123 F.3d 315, 319 (5th Cir. 1997); Ward v. Bechtel Corp., 102 F.3d 199, 202 (5th Cir. 1997); Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir. 1994).  Courts consider a variety of factors, including the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not.  Barrow, 10 F.3d at 297.  The test is objective.  The question is not whether Hunt felt compelled to resign, but whether a reasonable employee in her situation would have felt so

28

compelled. Id. at 297 n.19 (citing McKethan v. Texas Farm Bureau, 996 F.2d 734, 740-41 (5th Cir.), reh'g denied, 3 F.3d 441 (5th Cir. 1993), cert. denied, 510 U.S. 1046 (1994)).

Hunt failed to present evidence raising a genuine issue of material fact as to whether a reasonable person in her position would have felt compelled to resign. Hunt's duties did not change. Hunt did not allege that she was harassed, badgered, or required to perform menial or demeaning tasks. She received a merit increase. She did lose compensation and benefits by shifting from full-time to part-time status, but the record discloses that she worked an average of only ten hours per two week period less than she had worked as a full-time employee. The evidence does not raise a genuine issue of material fact that the Medical Center assigned her to the "pool" in order to encourage her resignation. To the contrary, the evidence showed that other full-time, day shift positions became available, but Hunt did not apply for them because she did not want to work outside the CCU. The only open day shift position in the CCU was in the "pool," on an as-needed basis, but it was Hunt's choice to limit herself to working in the CCU.

Hunt did argue, and testify, that she felt demeaned by her change of status. However, "constructive discharge cannot be based upon the employee's subjective preference for one position over another." Jurgens v. Equal Employment Opportunity Comm'n, 903 F.2d 386, 391 (5th Cir. 1990)(quoting Jett v. Dallas Indep. Sch. Dist., 798 F.2d 748, 755-56 (5th Cir. 1986), modified on other grounds, 491

29

U.S. 701 (1989)).  Hunt has failed to show that the choice among the night shift CCU position, applying for day shift positions outside the CCU, and the VSP position, was inherently demeaning.

Hunt failed to present evidence that would raise a genuine issue of material fact as to whether the Medical Center retaliated against her for taking FMLA leave, or constructively discharged her on her return.

IV. CONCLUSION

Disputed fact issues material to determining Hunt's claim that the Medical Center violated her substantive rights under the FMLA by failing to restore her previous position or an equivalent position when she returned from her leave preclude summary judgment as to this claim.  However, the undisputed facts fail to show an adverse employment action or constructive discharge, making summary judgment dismissing Hunt's retaliation claim proper. Accordingly, this court REVERSES in part, AFFIRMS in part, and REMANDS the case for further proceedings consistent with this opinion.