United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 11, 2007**

Charles R. Fulbruge III
Clerk

REVISED JUNE 12, 2007
UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

05-20653

_____

WILTON J. WILLIAMS,

Plaintiff-Appellant,

v.

LYONDELL-CITGO REFINING COMPANY, LTD.,

Defendant-Appellee.

_____

On Appeal from the United States District Court for the
Southern District of Texas, Houston
4:04-CV-2321

_____

Before REAVLEY, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellant Wilton Williams brought this action in federal
district court alleging that his former employer, Lyondell-Citgo
Refining ("LCR"), violated his rights under the Family and
Medical Leave Act ("FMLA"). He alleged, first, that LCR wrongly
denied his request for leave, and second, that LCR then
retaliated against him for making such a request. LCR moved for

_____

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

summary judgment and the district court granted that motion. Williams filed a motion to amend or alter that final judgment pursuant to Federal Rule of Civil Procedure 59, which the district court denied. Williams appeals that court's ruling as to both motions. We find that summary judgment was proper, and we AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

Wilton Williams was employed by the defendant, Lyondell-Citgo Refining ("LCR"), for about twenty-eight years. In 2001, through promotions, seniority and a merger, he was eligible to seek a promotion to Chief Operator of the Sulfur Unit. The promotion required him to pass five qualifying exams. In the meantime, he continued to serve as Chief Operator of the Environmental Unit. By the end of 2002, he had passed four of the five exams. In early February of 2003, Williams was suspended for a week without pay for failing to close a drain valve, an allegation that Williams denies. When Williams returned to work on February 11, 2003, he was told that he would have to take a competency examination. Williams reviewed the exam, but stated that he did not feel well enough to take it and asked that it be postponed. He then went to LCR's medical department for a check-up, and did not work that day. In fact, he never worked at LCR again.

The next day, February 12, 2003, Williams requested an FMLA packet so that he could receive FMLA funds for his absence. He

2

completed and submitted it to LCR on February 24, 2003. There is some debate about what happened thereafter. Williams says he got a phone call on March 7 from Linda Lamb, the FMLA coordinator at LCR, informing him that his FMLA and sick pay benefits were being denied. LCR disputes this claim, and says that Williams introduced no competent summary judgment evidence to support it. Later, on March 24, Williams appeared at work for a scheduled meeting. Before the meeting began, Williams submitted early retirement paperwork. He says that he did so because he feared that he would be terminated at the meeting, in which case he would have to wait several years before collecting any of his accrued benefits. During the meeting, however, Williams was not terminated; instead, he was told that he would have to take the competency exam on March 26. There was also a discussion at the meeting about whether Williams should withdraw his retirement papers, but he did not do so. On March 25, Williams received the first and only *written* notice that LCR denied his FMLA request. Williams never withdrew his early retirement papers and never returned to work.

Williams eventually filed suit in district court, alleging that LCR violated the FMLA once by denying his request for leave, and again by retaliating against him for making that request in the first place.[1] Specifically, he asserts that LCR retaliated

---

[1]We note at the outset that the parties disagree about whether Williams has actually maintained both of these claims throughout

3

by denying him company sick pay (as opposed to FMLA leave), and forcing him to apply for early retirement, which he occasionally refers to as constructive discharge. The district court granted summary judgment to the defendant on both FMLA claims.[2] Williams then filed a motion to alter or amend the judgment pursuant to FED. R. CIV. P. 59(e), and the court denied that without comment.

---

this litigation. In the First Amended Complaint, Williams states his cause of action in a single numbered clause, which reads as follows:

> Because Defendant denied Plaintiff leave, discriminated, harassed and retaliated against Plaintiff, Plaintiff was forced to retire. In doing so, Defendant willfully violated the FMLA, [and] its own policies . . . .

In its summary judgment motion, and again on appeal, LCR argued that this was a single FMLA claim based on constructive discharge. Both then and now, Williams has maintained that he is bringing two FMLA claims against LCR. He asserts that LCR violated his *prescriptive* FMLA rights by denying him FMLA leave, and then violated his *proscriptive* FMLA rights by retaliating against him for filing an FMLA claim. This is common under the FMLA, which has one provision granting prescriptive or substantive rights, and one granting proscriptive rights. *See* § 29 U.S.C. 2615(a)(1) (granting prescriptive rights); 29 U.S.C. § 2615(a)(2) (granting proscriptive rights); *see also Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004) (explaining relevant statutory provisions). Claims pursuant to § 2615(a)(1) are sometimes referred to as "interference" or "entitlement" claims, while claims pursuant to § 2615(a)(2) are sometimes referred to as "retaliation" claims.
   The language of Williams' pleading is certainly clumsy, but the district court plainly understood Williams to raise FMLA claims based on both sections of the FMLA. This much is clear from that court's order, which cites to and discusses both sections separately. We therefore proceed to treat both claims here, as well as the district court's denial of the Rule 59 motion.

   [2]Williams also originally included an intentional infliction of emotional distress claim in the court below, but he has abandoned that claim here.

4

Williams appeals.

## II. STANDARD OF REVIEW

We review motions for summary judgment *de novo*, applying the same standards as the district court. FED R. CIV. P. 56. Summary judgment is inappropriate whenever a genuine issue of material fact exists. A genuine issue of material fact exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). All evidence must be construed in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citations omitted).

We review the district court's denial of the Rule 59 motion for abuse of discretion. *See Ford Motor Credit Co. v. Bright*, 34 F.3d 322, 324 (5th Cir. 1994). Under this standard, the district court's decision need only be reasonable. *Id.* at 324.

## III. DISCUSSION

### A. WILLIAMS' PRESCRIPTIVE FMLA CLAIM FOR DENIAL OF LEAVE

Williams first claims that he was denied FMLA leave to which he was entitled. 29 U.S.C. § 2615(a)(1) makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." On appeal, LCR does not even take up the question of whether or not Williams was entitled to FMLA leave. Rather,

5

LCR hangs its hat on the premise that it did not deny Williams' FMLA request until after he retired, and thus that there was no interference with his rights. LCR asserts that Williams' retirement terminated his FMLA rights as a matter of law.

The Department of Labor's FMLA regulations provide that "[i]f an employee gives unequivocal notice of intent not to return to work, the employer's obligations under FMLA to maintain health benefits . . . and to restore the employee cease." 29 C.F.R. § 825.309(b). Williams does not challenge this legal point, but disagrees about when his claim was actually denied. Though he first received *written* notice of the denial on March 25, 2003, one day after he filed his early retirement papers, he says he received word orally from Linda Lamb, LCR's FMLA coordinator, as early as March 7, 2003.

Williams never mentioned any conversation with Ms. Lamb during his lengthy deposition, despite repeated questioning about when and how he found out that his FMLA request had been denied. In fact, the only written evidence that Lamb communicated a denial to Williams comes from Williams' own handwritten notes memorializing that conversation.[3] The notes state that Lamb

---

[3]Williams offered two other pieces of evidence that are not relevant here: (1) his own affidavit swearing to the conversation with Ms. Lamb, and (2) the deposition testimony of Williams' union representative, David Taylor, wherein Taylor says that Williams told him about the conversation with Lamb. Williams' affidavit about the conversation with Ms. Lamb was filed *after* the district court's judgment was issued, and contradicts his deposition

6

returned Williams' call on March 7, and the topic is "Sick Pay."

They go on to say:

> Linda-informed me that I did not have sufficient
> medical evidence to receive sick.  Her Boss Corquodale
> made the decision to stop Pay after evaluation.

Unfortunately for Williams, these notes say nothing at all about FMLA leave, so while they may corroborate a phone call on March 7, they do not support the proposition that Williams and Lamb discussed his FMLA request.

Apart from this written evidence, Williams introduced evidence that it was company policy to respond to FMLA requests within two business days of receiving all relevant information. This does make the three-week delay in Williams' case seem anomalous, but it hardly proves the claim that Lamb did in fact deny Williams' FMLA request on March 7.  The same is true of Williams' last piece of evidence, a narrative report from the Department of Labor, filed after an investigation into Williams'

---

testimony, wherein he never mentions a conversation with Lamb. Under our precedent, a party may not create a fact issue by submitting an affidavit that contradicts, without explanation, the party's prior deposition testimony. *E.g.*, *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482–83 (5th Cir. 2002).  Therefore, we must disregard Williams' post-trial affidavit.  As for Taylor's testimony, it does *not* support Williams' claim that Lamb told him he was denied FMLA leave.  In fact, it does exactly the opposite. Taylor testified that Williams mentioned a conversation with Lamb to him, but according to Taylor, Lamb told Williams that he "*had* met the necessary criteria regarding his reasons for being off under the Family Medical Leave Act."  While this tends to corroborate the claim that a phone conversation about the FMLA took place, it completely contradicts the assertion that Lamb denied Williams' request during that phone call.

claim. The report states: "The employer stated the company doubted the validity of Mr. Williams' illness, and therefore denied the leave." Williams argues that this is proof that LCR did deny his FMLA request, and not that it merely became moot upon his retirement. The question confronting Williams, however, is not whether his claim was denied, which is surely was, but *when* it was denied. The narrative report sheds no light on this issue. Therefore, we do not believe Williams has introduced enough evidence to allow a reasonable fact-finder to return a verdict for Williams, and thus summary judgment was appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[4]

B. WILLIAMS' PROSCRIPTIVE FMLA CLAIM FOR RETALIATION

Williams' second claim is that LCR retaliated against him for filing an FMLA claim in violation of 29 U.S.C. § 2615(a)(2). Specifically, he claims that LCR denied him company sick pay (that is, the sick pay due to him as per company policy, not per the FMLA), and constructively discharged him. To establish *prima facie* showing of retaliation under the FMLA, an employee must show that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision

---

[4]Williams also appears to argue that if his FMLA request really was denied on March 24, as LCR contends, then this amounts to a "per se" violation of the FMLA. Williams' argument on this score, if indeed he is making one, is not only confusing and unclear, but probably abandoned, as there is no indication that it was not raised below. We need not address it further.

was causally related to the protected activity.  *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). We find that Williams has failed to raise a genuine issue of material fact as to either constructive discharge or denial of sick pay.  First, the facts make clear that Williams was not constructively discharged.  Second, even if LCR's denial of sick pay is an "adverse employment action" for FMLA purposes, which LCR disputes, Williams has presented virtually no evidence that said decision was causally connected to his filing an FMLA request.[5]

In building his constructive discharge claim, Williams lists several incidents of harassment dating back to 2001.  For FMLA purposes, however, the only incidents that matter are those that took place between February 11, 2003 (the day he requested leave) and March 24, 2003 (the day he resigned).[6]  During this window there evidence simply does not allow for the conclusion that LCR made working conditions "so intolerable that a reasonable employee would feel compelled to resign."  *Hunt*, 277 F.3d at 771

---

[5]In light of this conclusion, we need not address LCR's contention that denial of sick pay is not an adverse employment decision for FMLA purposes.

[6]More specifically, Williams applied for retirement *before* the March 24 meeting, so any harassment he endured *at* the meeting—which makes up a significant number of his complaints—is arguably irrelevant.  However, the conversations at the meeting certainly suggest that Williams' retirement was not yet final, because his supervisors ordered him to return to work and take his competency exam.

(citations omitted).  Rather, the evidence, including Williams'

deposition, indicates that LCR wanted Williams to return to work

so that he could take the competency examination, and that

Williams himself wanted to return.  This is insufficient to

establish constructive discharge, and thus Williams cannot set

forth a viable proscriptive FMLA claim on that basis.

As to the denial of sick pay, LCR asserts that it made that

decision because it disbelieved Williams' illness, not to

retaliate against him for filing an FMLA claim.  Williams makes

little effort to show otherwise.  At most he suggests that LCR's

purported disbelief of his illness was mere pretext, but his

reasoning is entirely unavailing.[7]  The summary judgment evidence

did not raise a fact issue that the real reason behind the denial

---

[7]Williams' grounds for suspicion are as follows:  (1) Under FMLA guidelines, an employer who genuinely doubts the validity of an illness should request a second opinion at its own expense, which LCR did not do; (2) LCR placed Williams under surveillance for a ten-day period, but the investigator saw nothing out of the ordinary; (3) There is no indication that Williams ever abused the sick leave system in the past; (4)  LCR deviated from its own policy of provisionally approving all employees for sick pay; and (5) Union members had expressed some grievances with LCR's handling of FMLA claims.  Simply put, none of these reasons indicate that LCR's disbelief of Williams' illness was merely pretext for retaliating against him.  In fact, the first two explicitly favor LCR.  First, the FMLA regulations do not control how LCR administers company sick pay, and there is no reason why LCR would request a second opinion (at its own expense) if it sincerely felt Williams was lying.  Second, the fact that LCR hired an investigator only *supports* its claim that it honestly believed Williams was lying.  The remaining factors do not make it more or less likely that LCR was using a false excuse about Williams' illness as a pretext for denying him sick pay.

of sick pay was retaliation against Williams for having filed his FMLA request.  Without such a showing, Williams cannot make out a proscriptive FMLA claim based on the denial of sick pay.

Accordingly, because we find that Williams failed to introduce sufficient evidence for a reasonable fact-finder to rule in his favor as to either his prescriptive or his proscriptive FMLA claims, we AFFIRM the district court's grant of summary judgment for LCR as to both claims.

We hasten to add, however, that we took very seriously Williams' claim that during its recitation of the facts, the district court did not grant Williams every favorable inference to which he was entitled.  We agree with Williams that the district court's rendition of the facts does seem to favor LCR in a few places.  However, we are equally convinced that those few missteps were not material to the outcome of the case in any way, and our *de novo* review of the record satisfies us that LCR's motion for summary judgment was nonetheless properly granted.

## C. THE RULE 59 MOTION TO AMEND OR ALTER A FINAL JUDGMENT

A motion pursuant to FED. R. CIV. P. 59(e) allows a losing party to seek the trial court's reconsideration of its order granting summary judgment.  If the party seeking reconsideration attaches additional materials to its motion that were not presented to the trial court for consideration at the time the court initially ruled on the summary judgment motion, the

11

district court may consider those materials at its own discretion. *Ford Motor Credit Co. v. Bright*, 34 F.3d 322, 324 (5th Cir. 1994). Ordinarily when a party files a Rule 59 motion, it is to present the court with new evidence that was not available to the court at the time of judgment. In this case, however, the new evidence Williams sought to introduce was an affidavit from Williams himself, wherein he stated for the first time that LCR had denied his FMLA leave during the March 7 phone call. This new evidence was contrary to his deposition testimony and was presented after the court had already granted summary judgment. *See Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482–83 (5th Cir. 2002) (noting that party may not create fact issue by submitting an affidavit that contradicts, without explanation, prior deposition testimony). Therefore, we are satisfied that the district court's ruling was not an abuse of discretion.

## IV.  CONCLUSION

In light of the foregoing, the judgment of the district court is AFFIRMED in all respects.