# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 1, 2008

Charles R. Fulbruge III
Clerk

No. 07-30449
Summary Calendar

SHELLEY CHANDLER

Plaintiff-Appellant

v.

LA QUINTA INNS INC

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:06-cv-266

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Shelley Chandler ("Chandler") appeals the district court's order granting summary judgment in favor of Defendant-Appellee La Quinta Inns, Inc. ("La Quinta"). For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Chandler began working as the general manager of the La Quinta Inn in Shreveport, Louisiana, in 2002. In December 2004, she requested a medical

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

leave of absence under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654 (2000). Before beginning her leave, she assigned various tasks to several of her employees and wrote a memo detailing those assignments to Rob Cowan ("Cowan"), her supervisor and the Regional-Vice President.

While Chandler was on leave, on January 25, 2005, La Quinta's corporate office conducted a random audit of the Shreveport La Quinta Inn. Under the corporation's guidelines, a property will pass an audit if it scores a seventy or higher out of a total ninety-five possible points. The hotel failed the audit, receiving a score of 40.5, or 42.6%. This was in stark contrast to the previous audit on March 18, 2003, when the facility earned a score of 85.5, or 93.2%. The district court noted that some of the deficiencies found in the January 2005 audit were attributable to Chandler's performance before she went on leave while others arose during her absence and were beyond her control.

Upon Chandler's return from FMLA leave, Cowan notified her of the failing score on the audit and told her that the property had to score a ninety or above on the re-audit or she would face disciplinary action, which could include termination.[1] Cowan stated that he created this goal pursuant to an informal corporate policy requiring the average of an audit and re-audit after failure to be near 70%.[2] Chandler began to work on correcting some of the problems and sent Cowan an email on her progress. Cowan offered to visit the property to help or send another manager to assist, but Chandler never took Cowan up on his offer. Two weeks later, on March 25, 2005, Chandler submitted her resignation. She claims that achieving a score of ninety on any audit is impossible and that

---

[1] It is not clear if Cowan meant that she needed to score a ninety out of ninety-five or 90%.

[2] To achieve the goal of an average of 70%, the facility actually would have needed to score a 98% on the re-audit, but Cowan stated that he lowered the score Chandler needed to achieve to assist her.

the threat of disciplinary action for failing to achieve this goal amounted to a constructive discharge.

Chandler brought suit against La Quinta pursuant to the FMLA.[3]  She argues that La Quinta placed a new condition on her employment when she returned from leave and retaliated against her for taking FMLA leave by creating an unachieveable goal based on an audit that occurred while she was away, especially given that she had successfully managed the hotel when it passed the previous audit in March 2003.  The district court rejected her arguments and granted La Quinta's motion for summary judgment.  Chandler appeals.  We have jurisdiction over the district court's final order granting summary judgment pursuant to 28 U.S.C. § 1291.

## II.  STANDARD OF REVIEW

This court reviews a district court's summary judgment order de novo. Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005).  We will affirm the district court's decision to grant summary judgment if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Richardson, 434 F.3d at 332. In conducting this inquiry, we must "consider the evidence in a light most favorable" to Chandler, the non-moving party.  Richardson, 434 F.3d at 332.

## III.  DISCUSSION

A.  La Quinta did not Change the Conditions of Chandler's Employment in Violation of the FMLA

Under the FMLA, an employer must restore an employee who takes FMLA leave to the same position as the employee previously held or a comparable position with equivalent pay, benefits, and terms and conditions of employment.

---

[3] Chandler also sued Cowan and another La Quinta employee, Charles Johnson, but the district court dismissed them from this case.  Chandler does not appeal that dismissal.

29 U.S.C. § 2614(a)(1).  Chandler argues that the goal of scoring a ninety on the re-audit changed the conditions of her employment in violation of the FMLA.

Upon returning from FMLA leave, Chandler continued in her former position as the general manager of the Shreveport La Quinta Inn.  She had the same "pay, benefits and working conditions, including privileges, perquisites and status" as when she left.  29 C.F.R. § 825.215(a).  Her position after returning from leave also involved "the same or substantially similar duties and responsibilities, which [] entail[ed] substantially equivalent skill, effort, responsibility, and authority."  Id.  At most, the requirement of scoring a ninety on the re-audit or facing disciplinary action was a new performance goal, and Chandler presents no authority for her contention that a performance goal can serve as a new condition of employment.  We have previously held that "[d]e minimis, intangible changes in the employee's position do not . . . violate the FMLA." Smith v. E. Baton Rouge Parish Sch. Bd., 453 F.3d 650, 651 (5th Cir. 2006).  The performance goal of scoring a ninety did not amount to any change in Chandler's position or condition of employment, let alone a de minimis one, particularly given that Cowan created the goal pursuant to an informal policy that required an average around 70% for two audits if a facility fails the first audit.  Therefore, La Quinta did not violate the FMLA in creating a new performance goal upon Chandler's return from leave.

B.    Chandler Failed to Make a Prima Facie Showing that La Quinta Retaliated Against Her in Violation of the FMLA

Chandler contends that La Quinta retaliated against her for taking FMLA leave by creating an unattainable goal that amounted to a constructive discharge.  To make a prima facie showing of retaliation under the FMLA, the plaintiff must show that (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and (3) either (a) she was treated less favorably than an employee who had not requested leave under the FMLA, or (b) the

employer made the adverse decision because she took FMLA leave. See Hunt v. Rapides Healthcare Sys., 277 F.3d 757, 768 (5th Cir. 2002). The district court granted summary judgment for La Quinta after ruling that Chandler failed to make this prima facie showing.

Although Chandler meets the first prong of a prima facie case of retaliation because she took approved FMLA leave and therefore is covered under the FMLA, our inquiry ends at the second prong because Chandler did not suffer an adverse employment action. We have previously held that "only 'ultimate employment decisions,' such as hiring, granting leave, discharging, promoting, and compensating, satisfy the 'adverse employment action' element of a prima facie case of retaliation." Id. at 769 (internal citations omitted). An employment action that does not affect job duties, compensation, or benefits is not an "ultimate employment decision." Id.

Chandler's argument that the goal of scoring a ninety on the re-audit was an adverse employment decision because it amounted to a constructive discharge is unavailing. "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." Id. at 771. The test for whether an employer has created conditions that amount to a constructive discharge is objective, and we consider several factors, including whether the employee faces (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not. Id. at 771-72.

Chandler fails to demonstrate that any of these factors are present. La Quinta did not demote her, reduce her salary, reduce her job responsibilities, reassign her, badger, harass, or humiliate her, or offer early retirement.

Instead, La Quinta merely notified her of a new performance goal, which does not fall into any of these categories. Even if La Quinta told her she definitely would be fired if she did not reach the goal (a threat it did not make), this would be insufficient to establish an adverse employment action because a threat of termination does not constitute a constructive discharge. See Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995) (stating that "resignations can be voluntary even where the only alternative to resignation is facing possible termination"). This is because Chandler still had the choice to remain in her position and try to achieve the goal of scoring a ninety; indeed, Cowan stated that it was possible that La Quinta would not have terminated her even if she had not met the goal. See Hunt, 277 F.3d at 772; cf. Hillman v. Safeco Ins. Co. of Am., 190 F. Supp. 2d 1029, 1038 (N.D. Ohio 2002) ("While not reaching the required goals of the plan would put Hillman's employment in jeopardy, under the circumstances, a reasonable person likely would not conclude that termination was inevitable. Rather, termination was only one possible option for failing to satisfy the requirements of the performance plan."). Chandler also did not present any evidence that La Quinta created the goal of scoring a ninety on the re-audit to encourage her to resign or to make her work conditions intolerable, especially given that Cowan offered his assistance in fixing the problems at the facility. In short, Chandler presented no evidence that the goal of scoring a ninety on the re-audit would have made a reasonable employee feel compelled to resign. Because she cannot demonstrate that La Quinta constructively discharged her and because La Quinta did not impose any other adverse employment decision, Chandler fails to establish the second prong of a prima facie case of retaliation under the FMLA.

## IV. CONCLUSION

La Quinta did not change the conditions of Chandler's employment in violation of the FMLA. Chandler also failed to present a prima facie case of

retaliation under the FMLA because she pointed to no action that qualifies as an "adverse employment decision." Therefore, we affirm the district court's order granting summary judgment for La Quinta.

AFFIRMED.