# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 28, 2011

No. 10-20411
Summary Calendar

Lyle W. Cayce
Clerk

KAREN LEAL,

Plaintiff–Appellant

v.

BFT, LIMITED PARTNERSHIP, doing business as Great American
Business Products,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09cv1083

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

This appeal presents an issue under the Family and Medical Leave Act,
29 U.S.C. § 2601 *et seq.* (FMLA). Karen Leal (Leal) filed suit against her former
employer, BFT, L.P. (BFT) for allegedly retaliating against her for taking leave
to which she was entitled under FMLA. The district court granted BFT's motion

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

for summary judgment on her claims because Leal failed to show the existence of any genuine issue of material fact.  We AFFIRM.

**FACTS AND PROCEEDINGS**

In 2005, BFT, which sells business products through catalogs and phone orders, hired Leal into the newly-created position of "Trainer" at its Houston, Texas call center.  BFT's goal in adding this position was to improve its sales by continually training its call center staff.  Leal's duties as Trainer included training new and existing call center representatives, creating material for and conducting call center training programs, monitoring calls for quality, and critiquing call center employees on monitored calls.  By 2009, Leal was also engaging in some operational job functions that were not training responsibilities, including following up on open orders.

Since BFT became obligated under the FMLA, approximately forty of its employees have taken FMLA leave.  Some of these employees took more than one installment of FMLA leave. At least a few were later terminated for cause.

In May 2008, Doug Smith, BFT's President and CEO, determined that Leal was too highly compensated to conduct basic training for new call center employees.  He reassigned those responsibilities to June Humada, BFT's Lead Call Center Representative, who continued to perform this training until at least October 2009.

In July 2008, in response to the resignation of BFT's Call Center Manager, Smith appointed Dawn Coffman, who was at that time BFT's Office Manager, to take on the responsibilities of Call Center Manager.  Smith made the decision to consolidate the two positions into one based at least partly on economics.  When he appointed Coffman Call Center Manager, Smith questioned her about BFT's continuing need for a Trainer.  Coffman requested time to assess her new responsibilities before making a recommendation.  Over the following months,

Smith raised the need for a Trainer several times with Coffman, but she did not provide a firm recommendation and he did not make a decision on the issue.

Leal became pregnant in 2008 and formally requested FMLA leave in approximately August 2008 for a future date. The first conversation between Smith and Coffman regarding the Trainer position occurred before Leal informed Smith that she was pregnant.

In January 2009, in response to the economic downturn and decreasing sales, BFT laid off nine full-time employees. Two of these employees were from the call center, six from the graphics team, and one from the marketing team. On the same day, Coffman sent an e-mail to the call center confirming the layoffs and stating that all of the laid-off employees had received a severance package. Approximately one hour later, Coffman sent a second e-mail to the call center stating that: "There are no additional layoffs planned. We are right-sized now for the sales we are anticipating. **I repeat, the planned layoffs are complete!**"

Leal began her FMLA leave in February 2009 and was scheduled to return to work in April of that year. Before departing, Leal sent an e-mail to Smith detailing her current responsibilities. Smith was surprised that Leal was performing various operational functions in addition to her Trainer responsibilities. When Leal began her leave, Coffman sent an e-mail to the call center stating that, in Leal's absence, Humada would be assuming the responsibilities of Trainer.

In March 2009, Smith and Coffman determined that the Trainer position was no longer necessary for BFT. This decision was based on the decrease in call center representatives from forty to twenty-two from the time that Smith created the Trainer position and the fact that adding a Trainer had not increased sales. Smith's decision was not based on Leal's performance; he

expressed no dissatisfaction with her abilities or performance. Smith and Coffman did not intend to inform Leal that the Trainer position had been eliminated until she returned from her FMLA leave. However, Coffman became aware that Leal was possibly going to purchase a new vehicle and hire a nanny prior to her return, and Coffman and Smith agreed to immediately inform Leal about the discontinuation of her position.

On March 27, 2009, Coffman so advised Leal and offered her an eight-week severance package. The package was equivalent to the severance packages BFT previously offered to employees whose positions were eliminated; it was double the severance package that BFT offered to the individuals laid-off in January 2009. Also on March 27, Coffman sent an e-mail to various BFT teams stating that: "[W]e eliminated the 'Trainer' position and Karen won't be coming back. It was an economical decision and hope everyone will understand." Since that e-mail, no one has performed the remaining responsibilities of the Trainer position. The operational duties that Leal had taken on during her tenure continue to be performed by someone in the company.

Leal refused to sign a release and accept the severance package. She filed suit against BFT in the Southern District of Texas alleging FMLA retaliation. BFT moved for summary judgment, the district court granted its motion, and Leal appealed.

## STANDARD OF REVIEW

We review the district court's decision to grant a motion for summary judgment de novo. *Public Citizen Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 217 (5th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat

4

summary judgment with conclusory allegations or unsubstantiated assertions. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## DISCUSSION

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter . . . ." 29 U.S.C. § 2612(a)(1). It also contains a provision protecting employees from retaliation or discrimination for exercising FMLA rights. *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 580 (5th Cir. 2006).

Leal alleges that she was retaliated against for exercising her right to FMLA leave for the birth of her child. "The Fifth Circuit applies the *McDonnell Douglas* framework to analyze retaliation claims under the FMLA, noting that there is no significant difference between such claims under the FMLA and similar claims under other anti-discrimination laws." *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 768 (5th Cir. 2001) (quotation and citation omitted). Therefore, in order to establish a prima facie case of retaliation, Leal must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) the adverse decision was made because she took leave to which she was entitled under the FMLA. *Id.* Once she establishes a prima facie case, the burden shifts to BFT to articulate a legitimate nonretaliatory reason for its employment action. *Id.* Thereafter, the burden shifts back to Leal to "adduce evidence that would permit a reasonable trier [of] fact to find that the proffered reason is a pretext for retaliation." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (internal quotation and citation omitted). This requires the plaintiff to demonstrate that the adverse employment action would not have occurred "but for" the protected activity. *Id.*

5

Leal and BFT agree that Leal has satisfied the first two elements of her prima facie case: she was protected under the FMLA and suffered an adverse employment action. This court, like the district court, turns to whether Leal has shown that BFT made the adverse decision because she sought protection under the FMLA. This element, referred to as the "causal link," is "established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Medina*, 238 F.3d at 684 (internal quotation and citation omitted). The Supreme Court has held that, in order to establish the causal link, temporal proximity, if offered by itself, must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam) (noting that time periods of three and four months had been found by the appellate courts to be "very close" and holding that a period of twenty months was not "very close"); *see also Mauder*, 446 F.3d at 584 (citing *Clark Cnty.*). Because Leal was terminated during her exercise of FMLA rights, we conclude that the "temporal proximity" between her FMLA leave and the adverse action was "very close" and is sufficient to establish the necessary causal link for a prima facie case.

The burden therefore shifted to BFT to articulate a nonretaliatory reason for its employment decision. *Mauder*, 446 F.3d at 583; *Hunt*, 277 F.3d at 768. BFT stated that it eliminated the Trainer position because Smith believed that it was neither necessary nor beneficial to the company's goal of increased sales. To support this explanation, BFT submitted: (1) Smith's deposition testimony and Coffman's affidavit regarding the decrease in the size of BFT's call center since BFT created the Trainer position; (2) two e-mails from Coffman to the call center discussing the layoffs that BFT conducted in January; (3) Smith's deposition testimony regarding his decision to create the Trainer position; (4) Smith's deposition testimony and Coffman's affidavit regarding the timing

and reasoning behind Smith's decision to eliminate the Trainer position; and, (5) Coffman's e-mail to the call center announcing that the Trainer position had been terminated and Leal would not be returning to BFT.  The court holds that BFT has asserted a legitimate non-discriminatory reason for its decision.

The burden therefore shifted back to Leal to proffer evidence that would permit a reasonable trier of fact to find that BFT's proffered reason was a pretext[1] for retaliation for her exercise of FMLA leave.  Leal "must reveal a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc)).  Evidence is substantial if it is of "such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Rhodes*, 75 F.3d at 993).

To satisfy her burden, Leal submitted the following documents, which she attached to her opposition: (1) BFT's answer; (2) Coffman's affidavit; (3) Coffman's e-mail stating that BFT's planned layoffs were complete; (4) BFT's motion for summary judgment; and (5) Smith's deposition testimony stating that he was not dissatisfied with Leal's performance.  Leal argued that this evidence showed that BFT had admitted that its planned layoffs were complete and thus its decision to terminate her position was unrelated to the economy.  She also argued that BFT did not have complaints about her job performance.  Finally, she submits that the temporal proximity between her FMLA leave and BFT's adverse employment action demonstrated its discriminatory intent.

---

[1] Leal has never asserted that the mixed-motive analysis should apply and has therefore waived that argument. *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (holding that a failure to adequately brief an argument results in waiver).

Leal's proffered evidence does not create a genuine issue of material fact regarding whether or not BFT's asserted reason for eliminating the Trainer position was a pretext for its retaliation against her for taking FMLA leave. Leal submitted no evidence tending to show that BFT did not actually eliminate the Trainer position or that it actually conducted a layoff or terminated her for cause. Therefore, the e-mail indicating that BFT's planned layoffs were complete and its apparent satisfaction with her performance does not cast doubt on BFT's proffered explanation that it discontinued the Trainer position at the company. Leal's unsupported assertions of BFT's retaliatory intent also do not create a conflict in the evidence.

Leal's reliance on temporal proximity is similarly insufficient. BFT provided evidence that, when Leal requested FMLA leave, Smith and Coffman had already been discussing BFT's continued need for a Trainer. Leal has not disputed this timeline, which undermines her temporal proximity argument. *See Clark Cnty.*, 532 U.S. at 272–74 (holding that where evidence showed plaintiff's supervisor considered transferring plaintiff the day before she was served with plaintiff's lawsuit, there was no causal connection showing that the transfer was retaliatory).

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [engaged in retaliation]." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000). As the district court wisely noted, however, a plaintiff who creates "only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred" cannot survive summary judgment. *Id.* Leal's explanations are conclusory and she has produced no evidence in the record that she was discharged because she

8

requested FMLA leave. Because Leal has, at most, created a weak inference of fact regarding BFT's proffered reason for her termination, she has not submitted sufficient evidence to survive summary judgment. The district court properly granted BFT's motion.

## CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment in favor of BFT.