# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2011

No. 10-11067

Lyle W. Cayce
Clerk

DEBORAH HARRIS,

Plaintiff-Appellant,

v.

DALLAS INDEPENDENT SCHOOL DISTRICT,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC 3:08-CV-2071

Before WIENER, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM[*]:

Plaintiff, Dr. Deborah Harris, appeals from the district court's order granting summary judgment for defendant Dallas Independent School District (D.I.S.D.) on her claim under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq., which permits individuals who work for covered employers to take temporary leave for a "serious health condition," 29 U.S.C.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

§ 2612.  We AFFIRM.

I.

Harris worked for D.I.S.D. in various positions for approximately twenty-two years.  At the time of her termination, she was the coordinator of D.I.S.D.'s extended-year program, charged with overseeing the summer school program.  Due to budget cuts in 2007, the extended-year program consisted only of Harris and her secretary.

On March 31, 2008, at Harris's annual physical, her doctor recommended that she get a hysterectomy, which she had been putting off for years, as soon as possible.  As a result, Harris planned to take leave under the FMLA during May and June of 2008, right before summer school started.  Harris testified that another employee of D.I.S.D. would have to take her place while she was on leave.  Shortly thereafter, Harris's supervisor, Vincent Reyes, and D.I.S.D.'s Director of Academic Services, Renita Berry, held meetings with her to transfer her work to other members of the department.  Harris characterized the attitude in those meetings as negative and not supportive, explaining that she felt "overwhelmed" and "bombarded" with questions about transportation, payroll, supplies, and other details about summer school.  She testified that she did not feel hostility based on anything that Berry or Reyes said, but rather based on their tone.  Harris testified that Berry questioned whether she had to go on leave with all the preparation she still had to do for summer school and expressed disappointment upon learning that Harris had not completed many of the tasks expected of her.  Harris further testified that Denise Collier, D.I.S.D.'s Chief Academic Officer and Reyes's supervisor, told her she would be held accountable if anything went wrong while she was on her leave.

While on FMLA leave, Harris read in the newspaper that D.I.S.D. would

be reducing its workforce for budgetary reasons. The prior year, in 2007, D.I.S.D. had considered eliminating the extended-year department entirely because summer school could be run by other departments within the school district, each of which already contributed to the program, as was the practice in other school districts where Collier had worked. Collier was "fairly certain" that the department should be eliminated completely. Because Reyes had just started working at D.I.S.D., however, he convinced Collier to keep the department for his first year of tenure. They decided to try reducing the department from five positions to two, and Harris was demoted from director to coordinator.

Then, in the spring of 2008, just before Harris went on leave, Collier directed Reyes to implement a ten-percent cut to his budget. Reyes told everyone in his department to reduce their work scope, re-use material from prior years, and give him more recommendations on cost cutting. Harris admitted at her deposition that she did not get her reduction suggestions completed before she took leave, and Reyes had to give the task to someone else.

After receiving the suggested cuts from across Reyes's department, he and Collier again considered eliminating the extended-year department. Reyes testified that those discussions occurred in either March or April, and that he first suggested eliminating the department as a way to meet his reduced budget. When asked whether those discussions occurred before or after Harris requested FMLA leave, Reyes testified, "Well before that." Collier testified that annual budget decisions begin sometime in February or March, but the board does not ultimately approve the budget until June. In other words, Collier testified that she first heard about the budget reductions and layoffs in February or March. Across her division, close to ninety people lost their jobs

during the same time period.

When Harris returned from leave on June 16, Reyes notified her that her department, consisting of her and an assistant, would be eliminated effective August 31, 2008. The one-year contract she had received in 2007, when D.I.S.D. first considered eliminating her department, would not be renewed. Reyes offered to give her a recommendation for another job, but she declined. Although Harris's assistant was able to find another position in D.I.S.D., Harris never could. The extended-year department has not been reinstated, even though D.I.S.D. still holds summer school to the same extent that it did previously, and no one has been hired to take Harris's place.

Harris filed suit in state court in Dallas, and D.I.S.D. removed the case to the district court. D.I.S.D. filed a motion for summary judgment, which the district court granted.

## II.

This court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In order to survive summary judgment, Harris must raise a genuine issue of material fact that D.I.S.D. unlawfully terminated her employment as retaliation for exercising her rights under the FMLA, using the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). Harris must first establish a prima facie case of FMLA retaliation by showing that she (1) was protected under the FMLA, (2) suffered an adverse employment action,

and (3) was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006). Once she does so, the burden shifts to D.I.S.D. to establish a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Thereafter, Harris has the opportunity to show that D.I.S.D.'s stated reason is a pretext for discrimination. *Id.*

The district court found that Harris had established a prima facie case of FMLA retaliation, and that finding is unchallenged on appeal. The burden therefore shifted to D.I.S.D. to articulate a legitimate, non-discriminatory reason for her termination. D.I.S.D. asserted that she was terminated because of budget tightening and the resulting workforce reduction. The district court held that Harris did not raise a genuine issue of material fact as to whether that proffered non-discriminatory reason was pretextual.

## A.

This case turns on whether Harris raised a genuine issue of material fact regarding pretext. Harris argues that the timing of the termination decision establishes pretext, implying that a decision made after her notice of FMLA leave would do so automatically. Harris's argument misses the point. "The pretext inquiry focuses on the authenticity of the employer's proffered reason." *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 594 (5th Cir. 2007). In other words, we review *de novo* whether the reason given by D.I.S.D. was false, "unworthy of credence," or otherwise unpersuasive. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Therefore, although the timing of the decision can establish a prima facie case of retaliation and is a factor in considering pretext, alone it is insufficient to demonstrate pretext. *Swanson v.*

*Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). Ultimately, Harris must demonstrate that, but for filing for FMLA leave, she would not have been terminated. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

As the district court noted, while the exact date of the ultimate decision to eliminate the extended-year department cannot be pinpointed, there is substantial evidence to show that D.I.S.D.'s proffered reason—budget cuts—was not pretextual. D.I.S.D. was implementing broad reductions in workforce. Collier had never worked in a school where the summer school program was run by its own department and, as a result, had discussed eliminating the department in 2007 to meet the budget reduction requirements. Instead, based on Reyes's request, Collier and Reyes decided to keep the department for one year and to reduce its staff from five to two people. The department was then eliminated entirely in 2008—one year later, just as Reyes had requested. The department has not been reinstated since its elimination, and no one has been hired to replace Harris. In a similar context, we have relied on the elimination of a plaintiff's position as demonstrating that an employer's non-discriminatory reason was not pretextual. *See Leal v. BFT, Ltd. P'ship*, No. 10-20411, 2011 WL 1659573, at *4 (5th Cir. Apr. 28, 2011) (unpublished). Likewise, here, regardless of the timing of the decision, Harris has not brought forth any evidence of pretext to survive summary judgment.

Harris further argues that the revocation of her travel authorization demonstrates that D.I.S.D. decided to fire her *after* her request for FMLA leave, meaning D.I.S.D.'s proffered reason was pretextual. She has offered no evidence to support her contention, however. Before requesting FMLA leave, Harris had received travel authorization from Collier to attend a work-related conference. After Harris notified Reyes of her request for leave, Reyes and

Collier decided to revoke the authorization because of the limited number of workdays remaining prior to Harris's leave and the amount of work she had left to do. The conference would have required that Harris be gone for three of the remaining fourteen days before her leave. D.I.S.D. offered a legitimate, non-discriminatory reason for the revocation: that Harris had only fourteen business days between when the decision was made and when her leave began, which was the busiest time of year for the extended-year program, and the conference required that she be absent from work for three of those days. She has not produced any evidence demonstrating that D.I.S.D.'s legitimate business decision was "unworthy of credence." *Reeves*, 530 U.S. at 147.

B.

We next consider whether Harris presented sufficient evidence to support a finding of bias, which in turn supports an inference of retaliation. "An oral statement exhibiting discriminatory animus may be used to demonstrate pretext or . . . it may be used as additional evidence of discrimination. The remark must, first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker." *Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) (citation omitted).

Harris argues that she raised an inference of retaliation by showing that (1) Reyes initially questioned the timing of her leave and expressed a negative attitude toward Harris's leave request, (2) Collier revoked her travel authorization, (3) Harris filed a complaint with D.I.S.D.'s Office of Professional Responsibility (OPR) that was never investigated, (4) Harris received a negative performance review, (5) Harris could not find another job within D.I.S.D. and in fact only got one interview, and (6) at her deposition, school-board member

Ellis made hostile statements about Harris's leave.

First, there is insufficient evidence supporting an inference of bias based on the meetings held after Harris requested FMLA leave. These meetings occurred during the busiest time of the year for the extended-year department and involved making arrangements for completing Harris's outstanding work in preparation for summer school. Harris testified that she felt "overwhelmed" and "bombarded" with questions about the details of summer school, including transportation, payroll, and supplies. She testified that nothing particularly hostile was said. In fact, although she testified that Berry questioned whether Harris needed to go on leave, she then recanted that testimony. These vague allegations of a hostile tone do not demonstrate discriminatory animus. Nor has Harris established that Collier and Reyes, those primarily responsible for the termination decision, made any discriminatory remarks.

Second, as discussed above, the revocation of Harris's travel authorization does not demonstrate bias, hostility, or animus, but rather demonstrates a business decision made by Harris's supervisors based on the amount of work left to do before Harris went on leave.

Third, the fact that OPR "refused to investigate [her] complaint" and "did not bother to contact the employees that Dr. Harris complained about" does not demonstrate discriminatory animus. Harris filed an anonymous complaint with OPR after her trip was cancelled, reporting that a pre-approved business trip had been cancelled, she was made to look incompetent in a meeting, others had come into her office unannounced, and people commented that she had not finished her work. The Director of Investigations at OPR submitted an affidavit giving two reasons that OPR did not investigate her claim: First, she submitted it anonymously and gave no contact information. Second, "the complaint did

not reflect the type of employee misconduct or wrongdoing the OPR is charged with investigating." He noted that, while the events may have been frustrating, they did not constitute a violation of law.

Harris has not shown that the failure to investigate her complaint was based on discriminatory animus. The decision not to investigate her OPR complaint was not "made by a person primarily responsible" for her termination. *See id.* Neither has Harris established that the OPR's handling of her anonymous complaint had anything to do with her requested FMLA leave. In fact, she has not even shown that the OPR investigator assigned to her case knew that she had requested leave.

Fourth, the argument that Harris's poor final performance review established bias also fails. As the district court noted, she mischaracterizes her review. Harris received an overall rating of "proficient," which Reyes testified was a good rating and qualified her for a salary increase. She received a mark of "below expectations" in two areas: core values, and interpersonal skills and teamwork. Although Harris claims she had never received "below expectations" marks in any category, it is undisputed that she had received a "proficient" overall rating many times. Indeed, Reyes had conducted a mid-year performance review with Harris well before she requested leave, suggesting that she should improve her interaction with others. The review about which she complains, which was neither poor nor different from her other reviews, does not show discriminatory animus.

Fifth, Harris contends that the fact that she was unable to find another job within D.I.S.D. demonstrates FMLA retaliation. We have previously required in a similar context that a plaintiff demonstrate both that there were job openings for which she applied and that she was qualified for those jobs.

*See, e.g.*, *Stroud v. BMC Software, Inc.*, No. 07-20779, 2008 WL 2325639, at \*7 (5th Cir. June 6, 2008) (unpublished).  Harris has not met that standard. Harris testified that she "can't be certain" that her supervisors influenced the decisions not to hire her, but it was "possible" that they did because "[she] felt like [she] was qualified."  She then acknowledged that it was also possible that they did not interfere in her job applications.  Indeed, Harris and Reyes both testified that Reyes offered to give her a recommendation for other positions, but she declined.  Harris also testified that she had applied for at least five other positions in 2007, long before her FMLA leave, and had not received offers for any of those positions either.  Harris cannot show that her failure to find another position within D.I.S.D. was at all related to her FMLA leave.

Finally, the statements made by a D.I.S.D. school board member after the termination decision do not establish discriminatory animus.  After Harris's position was eliminated, she sought review of the decision through the D.I.S.D. Board of Trustees Subcommittee.  Leigh Ann Ellis and another board member affirmed the termination decision in a 2-1 vote.  Later, at her deposition, Ellis said that "perhaps if Dr. Harris was so concerned about her job, she could have waited 'til after summer school to have a hysterectomy . . . .  Wouldn't it have shown that maybe she was more concerned, if she was willing to put it off for maybe six or eight weeks . . . to ensure the program went well, and then, to have her operation?"  She went on to clarify that Harris's health was the most important thing in deciding the timing of her FMLA leave.  She testified repeatedly that Harris's FMLA leave had not factored into her decision to affirm the termination, which, in her view, was simply a non-renewal of a term contract.

The district court recognized that "Ellis's statements during her

deposition are unfortunate," but that they were insufficient to raise a genuine issue of material fact concerning whether D.I.S.D. unlawfully terminated Harris. We agree. In order to demonstrate discriminatory animus, Ellis's remark must have been made by "a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker." *Laxton*, 333 F.3d at 583. Ellis, who was not primarily responsible for the termination decision, made her statements over two years after the decision. Further, Ellis repeatedly testified that Harris's medical leave played no role in her decision to affirm the decision made by Reyes and Collier. Harris has not put forth any evidence of bias, animus, or hostility.

## III.

Harris next argues that D.I.S.D. intentionally withheld or destroyed documents that related to its budget discussions and allegedly would have shown when the decision to terminate Harris was made. The documents in question are notes that Reyes testified he made during the meeting in which he and Collier decided to eliminate the extended-year program. In an affidavit, Reyes later stated that he had conducted an extensive search for the notes and could not find them. Harris argues that these documents would have shown that the decision to eliminate Harris's department was made after her notice of FMLA leave and that the fact that they are missing raises a genuine issue of material fact as to pretext.

Harris waived this issue. Reyes's affidavit was filed in response to Harris's motion to compel. Harris then filed a brief reply, stating, "at this time, given the affidavit of Mr. Reyes stating there are no further documents, the discovery dispute at issue appears resolved." "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege."

11

*Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).  A waiver "occurs by an affirmative choice by [a party] to forego any remedy available to him, presumably for real or perceived benefits resulting from the waiver." *United States v. Dodson*, 288 F.3d 153, 160 (5th Cir. 2002).  By withdrawing her motion to compel, Harris chose to forego the remedy available to her.

IV.

In sum, Harris has not brought forth a genuine issue of material fact on pretext.  Accordingly, the judgment of the district court is AFFIRMED.