# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 7, 2013

No. 12-20702
Summary Calendar

Lyle W. Cayce
Clerk

JAY J. FORBES

Plaintiff–Appellant

v.

UNIT TEXAS DRILLING, L.L.C.,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-01434

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Jay Forbes sued his former employer, Unit Texas Drilling, LLC, alleging violations of the FMLA related to a period of protected leave. Forbes claims that Unit interfered with his FMLA rights during a phone conversation with a supervisor and retaliated against him when Unit failed to reinstate him to his prior job when he returned from leave. Since Forbes has failed to identify a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

genuine issue of material fact, Unit is entitled to judgment as a matter of law. Therefore, we affirm the district court's grant of summary judgment.

## I. Factual and Procedural Background

Unit Texas Drilling, LLC ("Unit") operates oil and gas drilling rigs in Texas, Louisiana, and Mississippi. Jay Forbes ("Forbes") was hired by Unit in 2005 to work as a floorhand. He was promoted a number of times in 2005 and 2006, eventually attaining the role of rig manager on Rig 154.[1] At some point Rig 154 was "stacked"—it was idle and not in operation—at which point Forbes was transferred to Rig 203, where he served as one of two rig managers.

Forbes's wife learned in May 2009 that she would need knee surgery. Forbes told his supervisors that he would probably need to take time off to care for her after the surgery. The surgery took place on July 8, 2009. In the weeks following the surgery, Forbes stayed home with his wife to help care for her. On July 18, 2009, Forbes received a phone call from Jerry Chaney ("Chaney"), his supervisor, instructing him to return to work or risk termination. Forbes explained the situation to Chaney, who responded that Forbes would need documentation from a doctor to corroborate his claim. Forbes called Unit's human resources department later and was told that he had not been fired, but that he would need to formally request FMLA leave by filling out the appropriate paperwork. After he filled out the forms and provided the necessary documentation, Unit approved Forbes's FMLA request and backdated it to July 18.

Around the time that Forbes completed Unit's FMLA paperwork, Rig 203 was stacked due to a lack of demand. As a result, and in accordance with its

---

[1] On a drilling rig, the supervisory hierarchy is as follows, from lowest position to highest: floorhand, motorman, derrickman, driller, and rig manager.

No. 12-20702

usual practice,[2] Unit eliminated the two rig manager positions on Rig 203. Rig 203 was not put back to work until March 2010, although rig managers were temporarily assigned to Rig 203 in November 2009 while the rig underwent repair and maintenance work.

Sometime in August 2009, Forbes informed Unit that he was ready to return to work. Rig 203 was still stacked, so Unit told Forbes that it would try to find him work on another rig. On September 11, Forbes was assigned to Rig 35 as a floorhand. Forbes worked only one or two shifts as floorhand before being promoted to motorman on Rig 307. Shortly thereafter Forbes was promoted again, to the position of driller on Rig 306. Forbes remained in that position until January 2010, when he suffered an injury. Forbes did not return to work after his injury.

Forbes filed suit against Unit, alleging FMLA violations, on March 7, 2011. The parties cross-moved for summary judgment in February 2012, and the district court granted summary judgment in Unit's favor. Final judgement was entered on September 21, 2012. Forbes filed a notice of appeal on October 19, 2012.

## II. Jurisdiction and Standard of Review

The Court has jurisdiction pursuant to 28 U.S.C. § 1291, as Forbes appeals the district court's final decision on the parties' cross-motions for summary judgment.

On appeal, this Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *Greater Hous. Small Taxicab Co. Owners Ass'n v. City of Hous.*, 660 F.3d 235, 238 (5th

---

[2] When a rig was stacked, Unit's policy was to attempt to keep employees on its payroll in some capacity on other rigs. This often meant employees had to take on different job responsibilities and job titles on different rigs in order to remain employed. Unit would lay off employees when stacking a rig if there were no other jobs available.

No. 12-20702

Cir. 2011). Summary judgment is warranted when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is not enough to simply claim a fact is disputed; such an assertion must be supported by argumentation and citations to the record. Fed. R. Civ. P. 56(c)(1)(A)–(B).

### III. Analysis

### A.    Interference with FMLA Rights

Forbes initially claims that Unit violated the FMLA by interfering with his rights under the FMLA when, while caring for his post-operative wife, he received a call from his supervisor threatening him with termination if he did not immediately return to work. Notwithstanding that Forbes subsequently called Unit's human resources department to verify that he had not been fired, Forbes claims that Chaney's phone call amounted to a brief termination and that Unit thus interfered with his FMLA rights. *See* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.").

The FMLA does not define "interference," but Department of Labor regulations provide that interference includes refusing to authorize FMLA leave, restraining or discouraging FMLA leave, and retaliating against employees who exercise FMLA rights. 29 C.F.R. § 825.220. In order for Forbes to prevail, Unit must have terminated Forbes while Forbes was availing himself of FMLA rights to which he was entitled.[3] An employee is actually discharged when the

---

[3] A dispute exists as to whether Forbes was in fact on FMLA leave at the time the Chaney phone call took place. We need not reach this issue since, even assuming *arguendo* that Forbes was on FMLA leave, Forbes has not identified facts that would lead a prudent

employer's language or conduct would logically lead a prudent person to believe they had been terminated. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 88 (2d Cir. 1996). As explained below, Unit did not interfere with Forbes's FMLA rights. There being no dispute of material fact, summary judgment is appropriate.

Unit did not interfere with Forbes's FMLA rights on July 18, 2009 because the conversation between Forbes and his supervisor would not have led a prudent person to believe he had been terminated. While Chaney may have initially directed Forbes to return to work or risk termination, the record unequivocally demonstrates that Forbes was not terminated at any point during his conversation with Chaney. During the phone call, Forbes explained his situation and Chaney ultimately acquiesced. According to Forbes, the conversation ended with Chaney telling Forbes that he would need to provide a doctor's note to corroborate his claim. A doctor's note would have been unnecessary if Chaney had fired Forbes. Moreover, Forbes confirmed that he had not been fired when he spoke to a human resources representative soon after the conversation with Chaney. There exists no dispute of material fact regarding the content of Forbes's conversations with Chaney and human resources. Unit is thus entitled to judgment as a matter of law on Forbes's interference claim. Therefore, summary judgment is appropriate. Fed. R. Civ. P. 56(a).

## B.     Failure to Reinstate

Forbes's second FMLA claim alleges that Unit failed to restore him to his prior job upon returning from leave and that this failure amounted to retaliation.[4] Under the FMLA, employees who take protected leave are entitled,

person to believe he had been fired.

[4] Retaliation claims under the FMLA are evaluated using the *McDonnell-Douglas* framework, whereby the plaintiff must first establish a prima facie case of retaliation. *Hunt*

upon their return, "to be restored . . . to the position of employment held by the employee when the leave commenced" or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)–(B). An equivalent position is one that is "virtually identical" to the employee's former position in terms of conditions, privileges, duties, and responsibilities. 29 C.F.R. § 825.215(a)–(e). However, the reinstatement privilege is not unlimited. "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." *Id.* § 825.216(a). An employee has no right to reinstatement if the employee's prior position has been eliminated.[5] *Id.* § 825.216(a)(2).

Here, the facts establish that Forbes's position had been eliminated by the time he returned from FMLA leave and that placing Forbes in a lower status role did not violate the FMLA. Rig 203 was stacked during Forbes's leave, and it remained stacked until well after Forbes returned to work. Accordingly, Forbes's position as rig manager on Rig 203 no longer existed when he returned from leave. Despite the elimination of his position, Unit nevertheless placed Forbes in a paid position upon his return. This procedure is entirely consistent

---

*v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). If he does so, the employer must proffer a legitimate nonretaliatory reason for the employment action at issue. *Id.* If the employer does so, the employee must show by a preponderance of the evidence that the nonretaliatory reason put forth is merely pretext for retaliation. *Id.*

[5] Forbes also cursorily claims that Unit violated the FMLA by waiting a month to reinstate him to work. However, Forbes has failed to identify any statutory provision or case law requiring employers to immediately reinstate employees at the end of their leave. The only Fifth Circuit case Forbes cites, *Beckendorf v. Schwegmann Giant Super Markets, Inc.*, 134 F.3d 369 (5th Cir. 1997) (per curiam) (unpublished), dealt with a situation where an employer unequivocally did not violate an employee's FMLA rights because the employee did not attempt to return to work until well after the twelve-week period guaranteed under the FMLA. Regardless, Forbes does not point to specific evidence of when he called seeking to return to work, nor to proof that contradicts Unit's evidence that it diligently sought to locate an open position for Forbes in the normal course.

with Unit's usual practice when rigs are stacked. Namely, Unit would transfer as many employees as it could to different positions on other rigs, while other employees would be laid off. Those who were not laid off would often be given different job titles on other rigs. Furthermore, the fact that eight former rig managers who had been demoted were moved back into rig manager positions between August 1, 2009 and December 31, 2009 does not alter the outcome here because Forbes was not similarly situated to these employees. In each instance, the reinstated rig manager had been demoted for periods that were as long or longer than the approximately three month period of Forbes's demotion, thereby undermining Forbes's claim of retaliation. *Cf. Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001) (a plaintiff alleging retaliation under the FMLA must show either that he was treated differently than similarly situated employees who did not request leave or that the action complained happened because he took leave).

The fact that Rig 203 was briefly staffed in November 2009 during repair and maintenance operations for a planned project that was cancelled in December 2009 does not change our conclusion because Forbes had no claim to a position created months after he returned from leave. While Unit staffed Rig 203 with a skeleton crew that included at least one rig manager position in November 2009, Forbes does not have a claim to this position. FMLA rights are measured "on return from . . . leave." 29 U.S.C. § 2614(a)(1). When Forbes returned from leave, his job as rig manager of Rig 203 had been eliminated. Forbes cannot lay claim to positions that were created more than two months after he returned from leave when it is not clear Forbes would have received the job had he not taken leave.[6]    *Cf.* 29 U.S.C. § 2614(a)(3)(B) (stating that

---

[6] Throughout his briefs, Forbes repeatedly states that he would have remained a rig manager but for his leave of absence. At no point does he corroborate this claim by citing to case law or the record. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B) (claiming that a fact is genuinely

employees are not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.").

Forbes has failed to create a genuine issue of material fact regarding his reinstatement after returning from leave. Nothing in the record suggests that Unit discriminated or retaliated against Forbes for taking FMLA leave. Rather, Forbes's position as rig manager of Rig 203 was eliminated during his leave, and Unit made every effort to keep Forbes employed in some capacity until he injured himself in January 2010. There being no genuine dispute of material fact, Unit is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## IV. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment for Unit.

AFFIRMED.

---

disputed requires citations to the record or a demonstration that the materials cited do not establish an absence of dispute).