# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30131
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
January 18, 2017

Lyle W. Cayce
Clerk

LIZA C. ARIZA,

> Plaintiff - Appellant

v.

LOOMIS ARMORED US, L.L.C.,

> Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:13-CV-419

Before STEWART, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Liza C. Ariza ("Ariza") sued her employer, Defendant-Appellee Loomis Armored US, L.L.C. ("Loomis"), alleging violations of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). At trial, the jury found for Loomis on all claims, and the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30131

district court entered a final judgment in accordance with the jury's verdict. Ariza appealed. Finding no error, we AFFIRM.

## I. BACKGROUND AND PROCEDURAL HISTORY

Loomis hired Ariza as an armored truck driver and guard in February 2008. According to Ariza, at the time she interviewed for the position, she informed Loomis's then-branch manager, Lauren Baronet, that she suffered from seizures. Baronet, however, disputed that Ariza ever indicated that she suffered from seizures or had any disability. Ariza did not identify that she had seizures or any disabling condition on Loomis's "Disabled & Veterans Self-Identification Form," nor did she request any ADA accommodation in the space provided on the form.

Ariza claims that on September 9, 2008, she suffered a seizure or fainting spell while driving an armored truck with coworker Allen Pierson. Pierson testified that, at the time of the incident, Ariza was not driving erratically, and he "didn't see anything that would be related to a seizure." Ariza's emergency room records stated that she had experienced a fainting episode, or syncope. Afterwards, Ariza did not request any accommodations, and she continued to drive the armored truck. In 2011, Loomis promoted Ariza to evening vault supervisor, a position that required her to carry a gun and to oversee millions of dollars in customer funds. Although Ariza alleges that Loomis moved her into the vault as an accommodation for her purported disability, Baronet testified that Ariza requested the position due to her school schedule.

On June 5, 2012, Ariza alleged that she suffered another seizure while at work. Loomis requested that she take FMLA leave, and she complied. While on leave, Ariza was in contact with Rebekah Jackson, Loomis's corporate benefits supervisor. Jackson testified that she explained to Ariza that in order to return to work, she needed to obtain a return-to-work release from both a private doctor and from Dr. Uzoma Moore, the company physician at

2

## No. 16-30131

Concentra Health Care ("Concentra"). According to Jackson, Loomis was not a decision maker in Ariza's fitness to return to work nor did it have access to medical records from her outside providers. Rather, the process was handled by Concentra and a third-party administrator. Ariza therefore needed to satisfy Dr. Moore's requests for information so that he could determine her fitness to return to work.

Ariza saw her personal neurologist, Dr. William Gladney, and he provided a fitness-for-duty certification on June 12, 2012. However, Loomis determined that the certification was based on false information provided by Ariza.[1] Dr. Gladney saw Ariza again on June 26th and concluded that she did not have seizures or epilepsy but rather occasional common vasovagal syncopal spells, which were possibly sinusitis-related. Ariza did not return to Dr. Gladney after that, and he never completed the required paperwork. Instead, Ariza obtained fitness-for-duty certifications from Dr. Bruce Craig, her family practitioner, and Dr. Charles Mitchell, the ENT physician who had recently performed her nasal surgery.

Ariza's FMLA leave ended on August 27, 2012. Because Ariza had not yet obtained a return-to-work clearance from Dr. Moore, Loomis determined that she had not satisfied the requirements for reinstatement. Instead, Loomis extended her leave through its internal Medical Leave of Absence program. Ariza saw Dr. Moore on August 28th, at which time he explained that Dr. Craig's return-to-work submission was illegible and insufficient due to its failure to address whether she was fit to carry a gun or whether her alleged

---

[1] Loomis asserts that Ariza provided a false medical history of seizures and epilepsy, falsely stated that she was on medication prior to June 5, 2012, falsely stated that she had gone off her medication prior to the June 5th seizure, and failed to advise Dr. Gladney that her job required her to carry a firearm.

3

seizures were being controlled by medication.[2]  Ariza reportedly "verbalized understanding" that Dr. Craig needed to provide a legible fitness-for-duty letter containing this information.  Ariza maintains that she eventually provided the requested certification.  Dr. Moore informed Loomis, however, that the documentation Ariza offered "did not include the information/details needed for clearance," and, accordingly, he "did not feel comfortable releasing [her] back to work."

On October 5, 2012, Ariza filed an Equal Employment Opportunity Commission ("EEOC") charge against Loomis.  In a letter dated October 8, 2012, Jackson informed Ariza that Dr. Moore was still awaiting an evaluation from a neurologist.  Three days later, Jackson sent Ariza a letter explaining that if she did not obtain the evaluation, Loomis would have no evidence that she could safely perform her job duties and would therefore be unable to return her to work as a vault supervisor.

Ten months later, Ariza sued Loomis in federal district court, alleging (1) discrimination on the basis of disability, (2) discrimination on the basis of being regarded as having a disability, (3) discrimination based on failure to accommodate a disability, and (4) interference with FMLA rights.[3]  Following a four-day trial, the jury returned a verdict for Loomis on all claims.  On appeal, Ariza challenges the verdict on two grounds: (1) that "the jury plainly err[ed] in not finding that Loomis regarded [her] as disabled" and (2) that "the jury plainly err[ed] when it found that Loomis had not failed or refused to restore [her] to her same or equivalent job on her return from FMLA leave."

---

[2] According to Dr. Moore, Dr. Craig was not aware at the time he provided the certification that Ariza's job as vault supervisor required her to carry a firearm.

[3] Ariza's claim of discrimination on the basis of sex was dismissed by the district court on summary judgment.

No. 16-30131

## II. DISCUSSION

### *A. Standard of Review*

Ariza concedes that she did not file a post-verdict motion for judgment as a matter of law, and so we review the sufficiency of the evidence for plain error only. *See Shepherd v. Dall. Cty.*, 591 F.3d 445, 456 (5th Cir. 2009); *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 573 (5th Cir. 2002). Under the plain error standard, we will set aside the jury's verdict only if "the judgment works a manifest miscarriage of justice." *Delano-Pyle*, 302 F.3d at 573 (internal quotation marks and citation omitted). Such a review requires us merely to ascertain whether Loomis has "submitted *any* evidence in support of [its] claim." *Id.* (quotation omitted); *see also Shepherd*, 591 F.3d at 456 (quoting *Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996)) ("the question . . . is not whether there was substantial evidence to support the jury verdict, but whether there was *any* evidence to support the jury verdict"). If Loomis has presented any such evidence, we will uphold the district court's judgment. *See Polanco*, 78 F.3d at 974. However, if no evidence supports the jury's verdict, we must order a new trial. *Id.*

### *B. ADA Claim*

Ariza argues that "the jury plainly err[ed] in not finding that Loomis regarded [her] as disabled." We disagree. "The ADA's definition of 'disability' includes individuals who are 'regarded as having such an impairment [that substantially limits one or more of the major life activities].'" *EEOC v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 729 (5th Cir. 2007) (quoting 42 U.S.C. § 12102(2)(C)) (alteration in original). An individual is "regarded as" being disabled if she "(1) has an impairment that is not substantially limiting but which the employer perceives as substantially limiting, (2) has an impairment that is substantially limiting only because of the attitudes of others, or (3) has

5

no impairment but is perceived by the employer as having a substantially limiting impairment." *Id.* (internal quotation marks and citation omitted).[4]

This court has held that an employer's "mere knowledge" of an employee's medical condition does not in itself "support an inference that [the employer] regarded [her] as disabled." *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 922 (5th Cir. 2015). We have also held that "an employer may regard an employee as impaired or restricted from one position or a narrow range of jobs without regarding [her] as 'disabled.'" *E.I. Du Pont de Nemours*, 480 F.3d at 729. Additionally, we have recognized that a person who is epileptic or has seizures is not automatically considered disabled; rather, such a determination requires an individualized assessment of the effects of that impairment on the person's major life activities. *Deas v. River W., L.P.*, 152 F.3d 471, 478 (5th Cir. 1998).

Ariza contends that Loomis regarded her as disabled because certain employees were aware of her history of seizures, and consequently, Loomis made changes to her work duties. Ariza points in particular to "Jackson's false and baseless assertions," which, in her view, caused Loomis to "regard[] Ariza as so disabled . . . she posed a safety risk from her seizure disorder preventing

---

[4] The jury instructions for the ADA "regarded as" claim stated in relevant part:

TO SUCCEED ON THIS CLAIM, PLAINTIFFS MUST PROVE THE FOLLOWING BY A PREPONDERANCE OF THE EVIDENCE: ONE, PLAINTIFF COULD HAVE PERFORMED THE ESSENTIAL FUNCTIONS OF HER POSITION WHEN DEFENDANT FIRED HER; TWO, PLAINTIFF HAS A RECORD OF AN EPILEPTIC AND/OR SEIZURE CONDITION THAT . . . SUBSTANTIALLY LIMITED ONE OR MORE MAJOR LIFE ACTIVITIES OR WAS REGARDED AS HAVING SUCH A PHYSICAL IMPAIRMENT; THREE, DEFENDANT KNEW THAT PLAINTIFF HAD A RECORD OF THIS IMPAIRMENT OR REGARDED PLAINTIFF AS HAVING SUCH AN IMPAIRMENT; FOUR, DEFENDANT FIRED PLAINTIFF; FIVE, DEFENDANT FIRED PLAINTIFF BECAUSE SHE HAD A RECORD OF AN EPILEPTIC AND/OR SEIZURE CONDITION OR WAS REGARDED AS HAVING SUCH A CONDITION.

No. 16-30131

Loomis from returning her to work." At trial, however, Loomis put forth ample evidence that it did not—nor did it have reason to—regard Ariza as disabled. For example, Loomis presented the records that Ariza claimed documented her long history of seizures and epilepsy—*e.g.*, Ariza's DMV records, National Guard records, and hospital records—none of which reflected a history of seizures, epilepsy, or any other disability. Baronet testified that when Ariza was hired, she never indicated that she had a disability or requested any accommodations. Baronet also stated that Ariza was transferred to the vault position not because she posed a safety risk but because she was attending college during her off time. Pierson testified that, on the day Ariza fell ill while driving, he did not observe any symptoms consistent with a seizure—an observation corroborated by Ariza's emergency room records. Jackson, who was aware that Ariza allegedly suffered from seizures, testified that she had no opinion as to Ariza's medical condition, that such a determination was not part of her job, and that Loomis was not a decision maker in Ariza's fitness to return to work. Additionally, Loomis presented evidence, such as text messages, to discredit Ariza and to show that she was a disgruntled employee who had been looking to change jobs for some time.

Thus, because Loomis presented ample evidence to support the jury verdict, *see Shepherd*, 591 F.3d at 456, we uphold the district court's judgment as to this claim.

### C. FMLA Claim

Ariza additionally argues that "the jury plainly err[ed] when it found that Loomis had not failed or refused to restore [her] to her same or equivalent job on her return from FMLA leave." We disagree. "The FMLA allows eligible employees to take up to twelve weeks of leave in any one-year period to address . . . the employee's own serious health condition." *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 768 (5th Cir. 2015) (citing 29 U.S.C. §

No. 16-30131

2612(a)(1)(C)–(D)). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" this right.[5] U.S.C. § 2615(a)(1). Employees who take FMLA leave "are entitled, upon their return, 'to be restored . . . to the position of employment held by the employee when the leave commenced' or 'to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.'" *Forbes v. Unit Tex. Drilling, L.L.C.*, 526 F. App'x 376, 380 (5th Cir. 2013) (quoting 29 U.S.C. § 2614(a)(1)(A)–(B)).[6]

Ariza argues that Loomis interfered with her rights under the FMLA because it did not return her to work after her FMLA leave ended. At trial, however, Loomis presented evidence that it did not engage in such interference and, in fact, made a concerted effort to restore Ariza to her position as vault supervisor. For example, Jackson testified that she did everything within her power to expedite Ariza's return to work and that Loomis "went above and beyond" what it would normally do to accommodate an employee—including offering to pay for Ariza to visit a neurologist and providing her with a written copy of her job description "to present to a neurologist of [her] choice." Jackson testified that it was Dr. Moore, not Loomis, who requested that Ariza obtain an evaluation from a neurologist, and because Ariza did not receive Dr. Moore's

---

[5] Although the FMLA does not specifically define "interference," "Department of Labor regulations provide that interference includes refusing to authorize FMLA leave, restraining or discouraging FMLA leave, and retaliating against employees who exercise FMLA rights." *Forbes v. Unit Tex. Drilling, L.L.C.*, 526 F. App'x 376, 379 (5th Cir. 2013).

[6] The jury instructions for the FMLA claim stated in relevant part:

TO PREVAIL ON THIS FMLA CLAIM, PLAINTIFF MUST PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT, ONE, PLAINTIFF SOUGHT TO RETURN TO EMPLOYMENT WITH DEFENDANT FOLLOWING FMLA LEAVE; AND, TWO, DEFENDANT FAILED TO RESTORE PLAINTIFF TO THE SAME POSITION SHE HELD AT THE TIME HER FMLA LEAVE BEGAN OR TO AN EQUIVALENT POSITION.

clearance, Loomis was never in a position to facilitate her return to work. Jackson additionally testified that, at the time of trial, Ariza was still on medical leave of absence pending her satisfaction of Loomis's return-to-work requirements and that Ariza's failure to see a neurologist was the "piece" preventing the completion of the reinstatement process. Further, Dr. Moore testified that it was his job to get Ariza back to work, that he informed Ariza that without a neurologist's evaluation he could not complete his own fitness-for-duty evaluation, and that Loomis in no way interfered or ever asked him to prevent Ariza from returning to work. Thus, Loomis provided abundant evidence that it was Ariza's own failure to comply with its established protocol—and not any action of the company—that prevented her from being restored to her job as vault supervisor or an equivalent position.[7]

Because Loomis provided sufficient evidence to support the jury verdict, *see Shepherd*, 591 F.3d at 456, the district court's judgment is sustained.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[7] Even assuming that Loomis prevented Ariza from being restored to her position, an employer "may delay restoration to an employee who fails to provide a fitness-for-duty-certificate to return to work." 29 C.F.R. § 825.216(b). The FMLA permits employers to have "a uniformly-applied policy or practice that requires all similarly-situated employees . . . who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work." *Id.* § 825.312(a). Section 825.312 generally describes the conditions required for an employer to delay restoration to an employee who fails to provide a fitness-for-duty certification. At trial, Loomis put forth evidence that it did not return Ariza to work due to her failure to provide the requisite fitness-for-duty certification.